PEOPLE v CAMPBELL

Docket No. 61003. Submitted July 21, 1982, at Detroit.—Decided March 21, 1983. Leave to appeal applied for.

Defendant, Steven Paul Campbell, was charged with open murder in connection with the suicide death of Kevin P. Basnaw. The facts indicate that, following a night of heavy drinking by Campbell and Basnaw, Campbell provided a weapon to Basnaw with the knowledge that he intended to commit suicide with the weapon. Sometime following defendant's departure from Basnaw's home on that evening, Basnaw was successful in his suicide attempt. Following a preliminary examination in district court, defendant was bound over to the St. Clair Circuit Court for trial. Defendant moved to quash the information and for his discharge on the ground that the act of providing a weapon to a person, who subsequently uses it to commit suicide, does not constitute the crime of murder. The trial court, James T. Corden, J., denied the motion to quash. Defendant appeals, by leave granted, from the trial court's order denying his motion. *Held:*

1. The term suicide excludes by definition a homicide. The defendant here did not kill another person.

2. Defendant had no present intention to kill. He provided the weapon and departed. Defendant hoped Basnaw would kill himself but hope alone is not the degree of intention requisite to a charge of murder.

3. No Legislature has classified incitement to suicide as murder although one-third of the states have held such conduct to constitute a crime.

4. Attempted suicide has not been held to be attempted murder at common law. It is not clear that incitement to suicide was ever considered murder at common law. It is

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 1, 7.
[2] 40 Am Jur 2d, Homicide §§ 1, 583.
[3] 40 Am Jur 2d, Homicide §§ 263 *et seq.*, 437, 583.
[4] 40 Am Jur 2d, Homicide §§ 584, 585.
[5] 40 Am Jur 2d, Homicide § 585.

extremely doubtful that incitement to suicide is a crime under the common law.

5. What conduct constitutes the crime of incitement to suicide is vague and undefined and no reasonably ascertainable standard of guilt has been set forth.

6. While defendant's conduct was morally reprehensible, it was not criminal under the present state of the law.

Reversed and remanded with instructions to quash the information and warrant and discharge the defendant.

1. HOMICIDE — MURDER — MANSLAUGHTER.

Homicide is the killing of one human being by another; homicide is not a crime in Michigan, however, murder and manslaughter are crimes.

2. CRIMINAL LAW — SUICIDE — HOMICIDE.

The term "suicide" excludes by definition a homicide.

3. CRIMINAL LAW — SUICIDE — MURDER — INTENT TO KILL.

A defendant's hope that a decedent would commit suicide, standing alone, is not the degree of intention to kill requisite to charge the defendant with murder following the decedent's suicide.

4. CRIMINAL LAW — SUICIDE — MURDER — INCITEMENT TO SUICIDE — COMMON LAW.

Attempted suicide has not been held to be attempted murder at common law; it is extremely doubtful that incitement to suicide is a crime under the common law.

5. CRIMINAL LAW — SUICIDE — INCITEMENT TO SUICIDE — STANDARDS OF GUILT.

Conduct which amounts to incitement to suicide is not criminal under the present state of the law; what conduct would constitute the crime of incitement to suicide has not been defined and a reasonably ascertainable standard of guilt has not been set forth.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, *C. Denton Wolf,* Chief Appellate Attorney, and *David M. Dean,* Assistant Prosecuting Attorney, for the people.

*Huegli & Parrish* (by *Sharon Parrish),* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and D. C. RILEY and C. J. HOEHN,* JJ.

C. J. HOEHN, J. Defendant, Steven Paul Campbell, was charged with open murder, MCL 750.316; MSA 28.548, in connection with the suicide death of Kevin Patrick Basnaw. Following a preliminary examination in district court on March 10, 1981, defendant was bound over to circuit court for trial. Defendant moved to quash the information and dismiss the defendant on the ground that providing a weapon to a person, who subsequently uses it to commit suicide, does not constitute the crime of murder. The motion to quash was denied by the circuit court, and this Court granted leave to appeal.

The concise statement of facts is as follows.

On October 4, 1980, Kevin Patrick Basnaw committed suicide. On the night in question, Steven Paul Campbell went to the home of the deceased. They were drinking quite heavily.

The testimony indicates that late in the evening the deceased began talking about committing suicide. He had never talked about suicide before.

About two weeks before, the defendant, Steven Paul Campbell, caught the deceased in bed with defendant's wife, Jill Campbell. Some time during the talk of suicide, Kevin said he did not have a gun. At first the defendant, Steven Paul Campbell, indicated Kevin couldn't borrow or buy one of his guns. Then he changed his mind and told him he would sell him a gun, for whatever amount of money he had in his possession. Then the de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ceased, Kevin Basnaw, indicated he did not want to buy a gun, but Steve Campbell continued to encourage Kevin to purchase a gun, and alternately ridiculed him.

The defendant and the deceased then drove to the defendant's parent's home to get the weapon, leaving Kimberly Cleland, the deceased's girlfriend, alone. Even though she knew of the plan, she did not call anyone during this period of time. She indicated she thought the defendant was saying this to get a ride home.

The defendant and the deceased returned in about 15 minutes with the gun and five shells. The deceased told his girlfriend to leave with the defendant because he was going to kill himself. He put the shells and the gun on the kitchen table and started to write a suicide note.

The defendant and the deceased's girlfriend left about 3 to 3:30 a.m. When they left, the shells were still on the table.

Steven, out of Kevin's presence and hearing, told Kimberly not to worry, that the bullets were merely blanks and that he wouldn't give Kevin real bullets. Kimberly and Steven prepared to leave.

On the way home, Kimberly asked Steven if the bullets he had given Kevin were really blanks. Steven said that they were and said "besides, the firing pin doesn't work". The girlfried indicated that both defendant and deceased were about equally intoxicated at this point. The deceased's blood alcohol was found to be .26%.[1]

The deceased's girlfriend drove herself to the defendant's home and remained there overnight.

---

[1] The prosecution contends these statements were fraud, however, the fraud, coercion or duress necessary to constitute murder would have to be practiced on the deceased.

The deceased's roommate, Alfred Whitcomb, arrived home at approximately 4 a.m. His testimony indicates that when he arrived home he looked for Kevin Basnaw throughout the home and was unable to find him, but he did see the suicide note on the kitchen table. He waited up about 20 to 30 minutes. The deceased did not come home, so he went to sleep on the couch.

Next morning, one Billy Sherman arrived at about 11:30 a.m. and he and the deceased's roommate found the deceased slumped at the kitchen table with the gun in his hand. Dr. Kopp, the county pathologist, listed the cause of death as suicide; self-inflicted wound to the temple. No autopsy was performed. No time of death was established.

The prosecutor and the trial court relied on *People v Roberts,* 211 Mich 187; 178 NW 690 (1920), to justify trying defendant for open murder. In that case, Mr. Roberts' wife had terminal multiple sclerosis. She was in great pain. In the past, she had unsuccessfully attempted suicide by ingesting carbolic acid. At his wife's request, Mr. Roberts made a potion of water and poison and placed it within her reach. Defendant Roberts was convicted of murder in the first degree.

We are not persuaded by defendant's attempts to distinguish this case from *Roberts, supra.*

We now consider whether the *Roberts* case still represents the law of Michigan, and we find that it does not. Recent cases of our Supreme Court cast doubt on the vitality of the 1920 *Roberts* decision.

The *Roberts* case, without discussion, assumed that a murder had occurred and considered only the degree of that crime. It then determined that the act of placing poison within the reach of the deceased constituted the administration of poison

within the meaning of 1915 CL 15192, now MCL 750.316; MSA 28.548, which provided:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life."

The prosecutor argues that inciting to suicide, coupled with the overt act of furnishing a gun to an intoxicated person in a state of depression, falls within the prohibition "or other wilful, deliberate and premeditated killing".

There exists no statutory definition of the term "murder". That crime is defined in the common law.

"Homicide is the killing of one human being by another. * * * 'homicide' is not a crime. In this state, it is 'murder' and 'manslaughter' that are crimes." *People v Allen,* 39 Mich App 483, 501; 197 NW2d 874 (1972) (LEVIN, J., *dissenting),* adopted by the Supreme Court in *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973).

The term suicide excludes by definition a homicide. Simply put, the defendant here did not kill another person.

A second ground militates against requiring the defendant to stand trial for murder.

"Courts might well emphasize that juries can convict of murder only when they are convinced beyond a reasonable doubt that (1) the defendant intended * * * to kill * * *." *People v Morrin,* 31 Mich App 301, 323; 187 NW2d 434 (1971).

Defendant had no present intention to kill. He provided the weapon and departed. Defendant hoped Basnaw would kill himself but hope alone is not the degree of intention requisite to a charge of murder.

The common law is an emerging process. When a judge finds and applies the common law, hopefully he is applying the customs, usage and moral values of the present day. It is noted that in none of the cases decided since 1920 has a defendant, guilty of incitement to suicide, been found guilty of murder. Instead, they have been found guilty of crimes ranging from the equivalent of negligent homicide to voluntary manslaughter.

In *State v Bier,* 181 Mont 27; 591 P2d 1115 (1979), the defendant was found guilty of negligent homicide where the defendant had cocked the gun and thrown it on the bed during an argument with his drunken wife.

In *Persampieri v Commonwealth,* 343 Mass 19; 175 NE2d 387 (1961), the defendant was found guilty of manslaughter where he loaded and gave a gun to his wife, who had previously attempted suicide, urged her to shoot herself, called her "chicken", and advised her to take off her shoes when she couldn't reach the trigger. This case is especially interesting because it shows a change of attitude by one of the courts on which the *Roberts* Court relied.[2]

In *State v Marti,* 290 NW2d 570 (Iowa, 1980), the defendant was found guilty of involuntary manslaughter when he loaded a gun, clicked the hammer twice to bring a live round into the chamber and then placed the gun uncocked within

[2] *Persampieri* concerned a charge of murder and the jury found manslaughter. The case is set forth as an expression of public opinion on the subject. Massachusetts cases are based on statute and are, therefore, not precedent in Michigan cases.

the reach of his girlfriend, who was intoxicated and seriously depressed.

A number of legislatures have considered the problem and have enacted legislation which may be accepted as evidence of present day social values in this area. A number of states have made, or proposed making, incitement to suicide a crime. The penalties imposed by some of these states include:

| Arkansas | —10 years |
| Colorado | —Manslaughter |
| Florida | —15 years |
| Maine | —1 year |
| Minnesota | —15 years |
| Missouri | —15 years |
| Oregon | —10 years |
| Wisconsin | —5 years |
| Michigan proposed | —10 years |

Incitement to suicide has not been held to be a crime in two-thirds of the states of the United States. In the states where incitement to suicide has been held to be a crime, there has been no unanimity as to the nature or severity of the crime.

Most certainly, Michigan's imposition of a mandatory life sentence, without parole, for this type of conduct stands as the most severe punishment afforded.

No Legislature has classified such conduct as murder.

Lastly, it is not clear that incitement to suicide was ever considered murder at the common law. Certainly, attempted suicide was not held to be attempted murder. *Regina v Burgess,* 9 Cox Crim Cas 247 (1862). Only three cases in the entire history of the United States have held such con-

duct to be murder, one of those cases having been decided in Massachusetts.

Whether incitement to suicide is a crime under the common law is extremely doubtful.

The Court finds no unanimity of custom or usage strong enough to be given the title of "common law". What conduct constitutes the crime of incitement to suicide is vague and undefined and no reasonably ascertainable standard of guilt has been set forth.

"The United States Supreme Court has frequently ruled that juries cannot be permitted to determine criminal liability without a reasonably ascertainable standard of guilt. Absent such standards, the jury has the sort of naked and arbitrary power which is inconsistent with due process." *People v Morrin, supra,* 31 Mich App 329.

While we find the conduct of the defendant morally reprehensible, we do not find it to be criminal under the present state of the law.

The remedy for this situation is in the Legislature. We invite them to adopt legislation on the subject as set forth in the Michigan Proposed Criminal Code.

The trial court is reversed and the case is remanded with instructions to quash the information and warrant and discharge the defendant.

M. F. CAVANAGH, P.J., concurred.

D. C. RILEY, J., concurred in the result only.