PEOPLE v KEVORKIAN NO 1

Docket No. 154740. Submitted January 4, 1994, at Lansing. Decided
    May 10, 1994, at 9:00 A.M. Leave to appeal granted, 445 Mich
    —.

Dr. Jack Kevorkian was indicted by an Oakland County Citizens
    Grand Jury on two counts of open murder and one count of
    delivering a controlled substance for other than legitimate and
    professionally recognized therapeutic and scientific purposes, as
    a result of his assistance in two suicides. The district court
    bound the defendant over on the murder charges but dismissed
    the drug delivery charge. The defendant filed a motion in the
    Oakland Circuit Court seeking to quash the information and
    dismiss the murder charges, and the prosecution appealed from
    the dismissal of the drug delivery charge. The circuit court,
    David F. Breck, J., granted the defendant's motion and denied
    the prosecution's appeal. In granting the defendant's motion,
    the circuit court acknowledged that *People v Roberts,* 211 Mich
    187 (1920), rejected the defense that assisted suicide did not
    constitute the crime of murder, but held that the holding in
    *Roberts* was dictum, and instead relied on *People v Campbell,*
    124 Mich App 333 (1983), and held that, because suicide is not
    a crime, a person cannot be criminally responsible for assisting
    a suicide. The prosecution appealed from the order granting the
    motion to dismiss the murder charges. The case was consoli-
    dated with three other appealed cases concerning assisted
    suicide, *Hobbins v Attorney General* (Docket No. 164963), *Peo-
    ple v Kevorkian* (Docket No. 171056), and *People v Kevorkian*
    (Docket No. 172399), and was decided on the same day as those
    cases, but in a separate opinion.

    The Court of Appeals *held:*

    1. The circuit court erred in dismissing the murder charges.

    2. The circuit court erred in holding that the language in
    *Roberts* rejecting the defense that assisted suicide does not
    constitute the crime of murder is dictum. The court also erred

REFERENCES
Am Jur 2d, Homicide §§ 111, 585.
Liability of doctor, psychiatrist, or psychologist for failure to take
    steps to prevent patient's suicide. 17 ALR4th 1128.

in finding the decision in *Campbell* applicable in this case. The conclusion in *Campbell* that *Roberts* no longer represents the law in this state is dictum. Because the decision in *Roberts* has not been overruled by the Supreme Court, the Court of Appeals is bound by stare decisis to follow *Roberts.*

3. There is no basis in either the statutes or the common law for an exception for physicians who aid and abet suicide.

4. The defendant's argument that he cannot be charged with murder because the Legislature subsequently enacted a law criminalizing assisted suicide is misplaced. The Legislature is not prohibited from providing a specific and lesser penalty for actions that could be punished under another statute with a harsher penalty.

Reversed and remanded.

D. E. SHELTON, J., dissenting, stated that the majority failed to address the obviously controlling constitutional due process issue involved in this case and, as a result, a doctor who assists in the death of a suffering terminally ill patient may be charged with murder, but not with a felony punishable by four years imprisonment. Neither suicide nor attempted suicide is a crime in this state or any state and, therefore, it is logically incomprehensible that a person can be charged with a capital crime of aiding and abetting a lawful act.

HOMICIDE — SUICIDE — PHYSICIANS AND SURGEONS — ASSISTED SUICIDE.

   A person who assists another in voluntarily committing suicide may be convicted of murder as a result of such action; there is no exception for physicians who aid and abet suicide.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Michael J. Modelski,* Chief, Appellate Division, for the people.

*Fieger, Fieger & Schwartz, P.C.* (by *Pamela A. Hamway, Geoffrey N. Fieger,* and *Michael A. Schwartz*), for the defendant.

Amici Curiae:

*Cecilia A. Rauth,* for the International Anti-Euthanasia Task Force; Ethics and Advocacy Task

Force of the Nursing Home Action Group; Hugh
Gregory Gallagher, M.A.; Carol Gill, Ph.D.; and
Paul Longmore, Ph.D., in support of appellant.

*Daniel C. Devine, Jr.,* for Hemlock of Michigan,
in support of appellee.

Before: FITZGERALD, P.J., and TAYLOR and D. E.
SHELTON,* JJ.

FITZGERALD, P.J. The prosecution appeals as of
right a July 21, 1992, order of Oakland Circuit
Judge David F. Breck granting defendant's motion
to dismiss two counts of open murder on the
ground that physician-assisted suicide is not a
crime in Michigan.[1]

I

On October 23, 1991, Marjorie Wantz and
Sherry Miller were reported dead by defendant.
Their bodies were found in a cabin at the Bald
Mountain Recreation Area. At the request of the
sheriff's department, the prosecutor referred the
matter to the Oakland County Citizens Grand
Jury for investigation. On February 3, 1992, defen-
dant was indicted by the grand jury on two counts
of open murder and one count of delivering a
controlled substance for other than legitimate and
professionally recognized therapeutic and scientific
purposes.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although this case was consolidated with *Hobbins v Attorney
General,* Docket No. 164963, and *People v Kevorkian,* Docket Nos.
171056 and 172399, this case has been decided in a separate opinion
because the issues raised in this case are not similar to those raised in
the other three cases wherein Dr. Kevorkian was charged with
assisting a suicide in violation of MCL 752.1027; MSA 28.547(127).
Contrary to Judge Shelton's suggestion in his dissenting opinion in
this case, no constitutional issues were raised in this case.

A preliminary examination was held on four dates between February 14 and February 28, 1992. The evidence presented showed that Ms. Wantz had complained of intense pain in the pelvic and vaginal areas for many years. Although she had undergone various operations, she had obtained no relief.

Ms. Miller was diagnosed with multiple sclerosis in 1978 or 1979. Her condition deteriorated over the years, and by 1989 she was using a wheelchair and had to be carried from place to place and put into the chair. By 1991, she was confined either to bed or to a wheelchair, did not have the use of her legs and her right arm, had only limited use of her left arm, and had problems talking and breathing.

At some point, Ms. Wantz and Ms. Miller learned of defendant's reputation as a champion of physician-assisted suicide. They contacted defendant separately on several occasions. Defendant eventually agreed to assist both individuals in taking their lives. Defendant, Ms. Wantz, Ms. Miller, and several family members or friends of each were present at the cabin on October 23, 1991. Ms. Wantz was hooked up to defendant's "suicide machine," which consisted of a board to which her arm was strapped to prevent movement, a needle to be inserted into a blood vessel, and containers of various chemicals that could be released into the needle through tubing and thus into the bloodstream. One of the chemicals was methohexital, which was described by expert witnesses as a fast-acting barbiturate used for the quick introduction of anesthesia under controlled circumstances. The drug quickly depresses respiration, and a large dose causes the recipient to stop breathing.

After defendant inserted the needle into a vein in Ms. Wantz' arm, he tied strings to two of her

fingers. The strings were attached to clips on the tubing connected to the needle. The clips held back the methohexital and another drug, potassium chloride. Defendant instructed Ms. Wantz how to pull the strings attached to the clips so as to allow the drugs to flow into her bloodstream. Ms. Wantz followed defendant's instructions and died as a result of a lethal dose of methohexital.

Defendant twice attempted to connect the suicide machine to Ms. Miller, but failed. He then left the cabin and returned to his office or residence in Royal Oak where he procured a tank of carbon monoxide gas and a mask assembly. About three hours later, he returned to the cabin, where he attached a screwdriver to the gas canister to act as a lever to open the gas valve. Defendant then attached the mask to Ms. Miller's face and instructed her how to open the gas valve. Ms. Miller died from carbon monoxide poisoning.

At the close of the preliminary examination, the district court bound defendant over on two counts of open murder, but dismissed the drug delivery charge.

Defendant filed a motion in the circuit court to quash the information and dismiss the murder charges, and the prosecutor appealed the dismissal of the drug delivery charge. In an opinion and order dated July 21, 1992, the circuit court granted defendant's motion and denied the prosecutor's appeal.[2] In granting defendant's motion to dismiss, the circuit court acknowledged that *People v Roberts,* 211 Mich 187; 178 NW 690 (1920), rejected the defense that assisted suicide did not constitute the crime of murder, but held that the Court's holding was dictum in view of the fact that Roberts had pleaded guilty of open murder. The

[2] The prosecution has not appealed the dismissal of the drug charge.

circuit court instead relied on *People v Campbell,* 124 Mich App 333; 335 NW2d 27 (1983), and held that, because suicide is not a crime, one cannot be criminally responsible for assisting a suicide.

II

In this case of first impression, we are asked to determine whether the murder statute applies to the conduct of a physician who assists another in voluntarily committing suicide.

Michigan statutory law does not define the term "murder." Thus, the crime is defined by the common law and was early defined by the courts as follows:

> "Murder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied." [*People v Aaron,* 409 Mich 672, 713; 299 NW2d 304 (1980), quoting *People v Potter,* 5 Mich 1, 6 (1858).]

MCL 750.316; MSA 24.548 classifies first-degree murder as:

> Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life.

Under the common law, suicide was murder. See *Cruzan v Director, Missouri Dep't of Health,* 497 US 261, 294; 110 S Ct 2841; 111 L Ed 2d 224 (1990)

(Justice Scalia, concurring). Suicide is no longer considered a criminal act, not because the act does not fall within the definition of murder, but because no punishment is provided for self-murder.[3] The American Law Institute's Model Penal Code, which is widely regarded as the greatest criminal law reform project of this century, criminalizes aiding or soliciting another to commit suicide, but does not criminalize suicide or attempted suicide. *Roberts, supra,* which held that aiding a suicide falls within the common-law definition of murder, is consistent with this view.

In *Roberts,* the defendant pleaded guilty of the murder of his wife. The defendant's wife, who had unsuccessfully attempted suicide in the past, had terminal multiple sclerosis and was in great pain. At his wife's request, the defendant made a potion of water and poison and placed it within her reach. As the defendant watched, his wife took the poison and died.

After Roberts entered a plea confessing his guilt, the court found him guilty of first-degree murder within the meaning of 1915 CL 15192, now MCL 750.316; MSA 28.548. On appeal, Roberts raised three claims of error, one of which was that there was no evidence that he had committed first-degree murder:

> The proceedings are further assailed by the claim that there is no evidence of the commission of the crime charged. In support of this counsel contends, in substance, that suicide is not a crime in Michigan. That defendant's wife committed no offense in committing suicide, that if she, as principal, committed no offense, defendant committed none as an accessory before the fact. In short, that

---

[3] The decriminalization of suicide occurred because the punishment —forfeiture of all property and burial in the highway with a stake through the deceased's body—is no longer considered appropriate.

if the principal is not guilty the accessory is not.[4]
[*Roberts, supra* at 195.]

The Supreme Court disagreed and upheld the
defendant's conviction:

> If we were living in a purely common-law atmo-
> sphere with a strictly common-law practice, and
> defendant were charged with being guilty as an
> accessory of the offense of suicide, counsel's argu-
> ment would be more persuasive than it is. But
> defendant is not charged with that offense. He is
> charged with murder and the theory of the people
> was that he committed the crime by means of
> poison. He has come into court and confessed that
> he mixed poison with water and placed it within
> her reach, but at her request. The important ques-
> tion, therefore, arises as to whether what defen-
> dant did constitutes murder by means of poison.
>
> \*    \*    \*
>
> In considering the status of one who advises or
> aids another to commit suicide, 37 Cyc p 521, has
> this to say:
> "Where one person advises, aids, or abets an-
> other to commit suicide, and the other by reason
> thereof kills himself, and the advisor is present
> when he does so, he is guilty of murder as a
> principal, or in some jurisdictions of manslaugh-
> ter; or if two persons mutually agree to kill them-
> selves together, and the means employed to pro-
> duce death take effect upon one only, the survivor
> is guilty of murder of the one who dies. But if the
> one who encourages another to commit suicide is
> not present when the act is done, he is an acces-
> sory before the act and at common law escapes
> punishment because his principal cannot be first

---

[4] The view that aiding a suicide is not a crime because suicide is not
a crime has been criticized as being "most certainly unsound." La-
Fave & Scott, Criminal Law (2d ed), § 7.8(c), pp 650-652 (1986). Indeed,
the Model Penal Code criminalizes aiding or soliciting another to
commit suicide but does not criminalize suicide or attempted suicide.
ALI Model Penal Code and Commentaries, part II, § 210.5, p 94
(1985).

tried and convicted. The abolition of the distinction between aiders and accessories in some jurisdictions has, however, carried away this distinction, so that a person may now be convicted of murder for advising a suicide, whether absent or present at the time it is committed, provided the suicide is the result of his advice."

* * *

We are of the opinion that when defendant mixed the paris green with water and placed it within reach of his wife to enable her to put an end to her suffering by putting an end to her life, he was guilty of murder by means of poison within the meaning of the statute, even though she requested him to do so. By this act he deliberately placed within her reach the means of taking her own life, which she could have obtained in no other way by reason of her helpless condition. [*Roberts, supra* at 195-196, 198.]

The circuit court erred in holding that the above language from *Roberts* is dictum. In his appeal, Roberts argued that the crime of murder does not encompass the act of aiding and abetting a suicide. Such a defense implicates the very authority of the state to bring the defendant to trial and is not waived by a plea of guilty. See, e.g., *People v New,* 427 Mich 482, 492; 398 NW2d 358 (1986) (assertions that a charge is brought under an inapplicable statute are not waived by a plea of guilty).

The circuit court also erred in finding applicable this Court's decision in *Campbell, supra.*[5] In *Campbell,* this Court was faced with the issue whether inciting a suicide was murder. The defendant and a friend were drinking heavily one night when the friend began talking about committing suicide.

[5] The Supreme Court denied leave to appeal in *Campbell.* 418 Mich 905 (1984). The denial of an application for leave to appeal has no precedential value in and of itself. *Clink v Steiner,* 162 Mich App 551, 556; 413 NW2d 45 (1987).

The friend mentioned that he did not have a gun, and the defendant offered to sell him a gun for whatever amount of money the friend had in his possession at the time. The defendant encouraged his friend to buy the gun and ridiculed him for hesitating to do so. The two men subsequently obtained a gun and ammunition from the home of the defendant's parents and returned to the original scene approximately fifteen minutes later. The defendant departed while his friend was holding the gun and the shells were on a table. The next morning the victim was found dead of a self-inflicted gunshot wound.

The defendant was charged with open murder. Relying on *Roberts,* the trial court denied the defendant's motion to quash. On appeal, this Court recognized that *Roberts* held that aiding and abetting a suicide constitutes murder, but held that *Roberts* no longer represented the law in Michigan because "[r]ecent cases of our Supreme Court cast doubt on [its vitality]." *Campbell, supra* at 337. The opinion does not, however, explain the basis for this conclusion.

The *Campbell* opinion also concludes that the Supreme Court failed to determine in *Roberts* whether Roberts' act of placing poison within the reach of his wife constituted the crime of murder. The *Campbell* opinion thus reasons that because the term "homicide" was defined at common law as the "killing of one human being by another," the term "suicide" excludes, by definition, a homicide. In actuality, however, the *Roberts* opinion specifically responded to Roberts' allegation that there was no evidence of the commission of the crime charged because suicide is not a crime in Michigan and held that the defendant's acts constituted murder by means of poison. *Roberts, supra* at 195-196, 198.

*Campbell* is also suspect authority for two additional reasons. First, *Campbell* was based on the erroneous belief that suicide and aiding or inciting suicide are not classified as murder or homicide under the common law. As we have noted, at common law suicide was a form of murder. *Cruzan, supra.* If suicide is murder, then one who is an accessory to or aided and abetted in the suicide is criminally liable. Indeed, in Michigan, these distinctions have been obliterated, and both accessories before the fact and aiders and abettors are now as liable as are principals.

Secondly, the issue in *Campbell* was whether *inciting* a suicide is a crime. As noted by the Court, the defendant did not have a present intention to kill. Under the facts of that case, the Court was legally justified in finding that the defendant's conduct did not constitute murder. In *Roberts,* however, the issue was whether *assisting* a suicide with the intent to kill is a crime. It was not necessary for the Court in *Campbell* to determine whether *Roberts* still represented the law in Michigan. Were *Roberts* held to be binding, it would not have controlled the outcome in *Campbell* because the *Campbell* Court concluded that incitement to suicide did not require the degree of intention requisite to a charge of murder. *Campbell, supra* at 339. Hence, *Campbell's* conclusion that *Roberts* no longer represents the law in Michigan is dictum.[6]

As noted above, the reasons cited in *Campbell* in support of a finding that *Roberts* no longer represents the law in Michigan are factually and legally unsupported. Our research has unveiled no author-

---

[6] Any statements in an opinion concerning some rule of law or debated legal proposition not necessarily involved or essential to determination of the case are obiter dicta and lack the force of an adjudication. *People v Case,* 220 Mich 379, 382-383; 190 NW 289 (1922).

ity that would support a finding that *Roberts* is no longer binding. A decision of the Supreme Court is binding until the Supreme Court overrules itself. *People v Mitchell,* 428 Mich 364, 369-370; 408 NW2d 798 (1987). See also *Boyd v W G Wade Shows,* 443 Mich 515, 525; 505 NW2d 544 (1993). Thus, we are bound by stare decisis to follow *Roberts.*

The circuit court distinguished *Roberts* on the ground that Roberts was not a physician. However, we have found no basis in either the statutes or common law for an exception for physicians who aid and abet suicide.

Rather than judicially rewrite the laws of this state, it is proper, in fact the oath we took requires nothing less, to rely on the Legislature to devise, should it choose to do so, a means to avoid the harsh penalty that is imposed when assisting a suicide is treated as murder pursuant to a literal application of MCL 750.316; MSA 28.548.[7] It is well to recall Justice O'Connor's quotation of *Springer v United States,* 102 US 586, 694; 26 L Ed 253 (1881), in her opinion concurring in part and dissenting in part in *United States v James Daniel Good Real Property,* 510 US —, —; 114 S Ct 492; 126 L Ed 2d 490, 516 (1993):

---

[7] In an apparent attempt to address this concern, the Legislature passed the assistance to suicide act, 1992 PA 270, as amended by 1993 PA 3, MCL 752.1021 *et seq.*; MSA 28.547(121) *et seq.* The act provides that one who provides the physical means by which a person attempts to commit suicide or participates in the physical act by which another attempts to commit suicide is guilty of a felony punishable by up to four years' imprisonment. Defendant's argument that he cannot be charged with murder because the Legislature subsequently enacted a law criminalizing assisted suicide is misplaced. The Legislature is not prohibited from providing a specific and lesser penalty for actions that could be punished under another statute with a harsher penalty. See, e.g., the Legislature's creation in 1988 of the statutory crime of retail fraud that was enacted to eliminate the perceived inequity of charging shoplifters with larceny from a building. MCL 750.356; MSA 28.588, MCL 750.356c; MSA 28.588(3), MCL 750.360; MSA 28.592.

"If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government."

We conclude that the circuit court erred in dismissing the murder charges against defendant.

Reversed and remanded.

TAYLOR, J., concurred.

D. E. SHELTON, J. *(dissenting).* I dissent, primarily for the reasons set forth in my partial concurring opinion in the consolidated cases of *Hobbins v Attorney General,* Docket No. 164963, *People v Kevorkian,* Docket No. 171056, and *People v Kevorkian,* Docket No. 172399. The majority simply fails to address the obviously controlling constitutional due process issue raised by all four of these cases. The end, and awful, result of the decisions in these four cases is that while it is constitutionally prohibited to charge a felony punishable by four years' imprisonment against a doctor who assists in the death of a suffering terminally ill patient, it is permissible to charge that doctor with the capital crime of murder. The majority apparently feels that this result is one to which they "are bound by stare decisis," *ante,* p 191, but is nevertheless one that is patently unjust. Justice is about nothing if not about the way it actually affects the lives of people.

I also write to distance myself from the majority's discussion of *People v Roberts,* 211 Mich 187; 178 NW 690 (1920), and *People v Campbell,* 124 Mich App 333; 335 NW2d 27 (1983). Neither suicide nor attempted suicide is a crime in this state or in any other state in this Union. It is logically incomprehensible that a person can be charged

with a capital crime of aiding and abetting a *lawful* act. The rationalization cited by the majority for the proposition that this obvious logic is "unsound" is that suicide was only decriminalized because it is realistically impossible to punish the dead perpetrator. Even if that were the case, it does not explain the fact that attempted suicide is also not a crime even though the perpetrator is available for "appropriate" punishment. The circuit court correctly ruled with regard to this issue and its decision should be affirmed.