VERNA'S TAVERN, INC v HEITE

Docket Nos. 212011, 212029. Submitted April 3, 2000, at Detroit. Decided December 15, 2000, at 9:00 A.M.

Brent Johnson, as personal representative of the estate of Michelle Johnson, and Linda Johnson brought an action in the Wayne Circuit Court against Lawrence Heite, Verna's Tavern, Inc., and others, alleging in part that Verna's was liable pursuant to the dramshop act, MCL 436.22(4); MSA 18.993(4), for furnishing liquor to Heite while he was visibly intoxicated, thereby proximately causing the automobile accident in which Michelle Johnson and David E. Dunn were killed. Donald E. Dunn, as personal representative of the estate of David E. Dunn, and others brought a similar action against the same defendants in the Wayne Circuit Court. Verna's filed cross-claims against Heite for indemnification pursuant to MCL 436.22(7); MSA 18.993(7). The court consolidated the actions before submitting them to mediation. The mediation panel issued an evaluation that awarded the plaintiffs damages payable by Heite and Verna's, but denied Verna's any recovery on its cross-claims for indemnification. Verna's accepted the evaluation with regard to the plaintiffs, but rejected the determination that it was not due any amount on its cross-claims. The plaintiffs accepted the awards in their favor and against Verna's, but, along with Heite, rejected the awards in favor of the plaintiffs and against Heite. The court entered judgment on the mediation awards for the plaintiffs and against Verna's. On cross-motions for summary disposition of Verna's cross-claims for indemnification by Heite, the court, Marianne O. Battani, J., granted summary disposition for Heite. Verna's appealed.

The Court of Appeals *held*:

MCR 7.215(H)(1) compels the Court of Appeals to follow *Hoover Corners, Inc v Conklin*, 230 Mich App 567 (1998), and reverse the trial court's grant of summary disposition in favor of Heite and remand for further proceedings in which Verna's can demonstrate its liability and establish its right to indemnification. Were it not for *Hoover Corners*, the Court of Appeals would hold that a claim for indemnification under MCL 436.22(7); MSA 18.993(7) cannot sur-

vive a settlement between the dramshop and the plaintiff, and would affirm the decision of the trial court in its entirety.

As correctly decided in *Hoover Corners*, the language employed in MCL 436.22(4), (7); MSA 18.993(4), (7) evinces intent by the Legislature that damages be awarded for purposes of indemnification under subsection 7 when monetary compensation is paid to an injured individual for actual damages suffered under the conditions specified in subsection 4, as determined by a trier of fact after consideration of the merits of the injured individual's damage claims. Although an accepted mediation evaluation serves as a final adjudication of the claims mediated, the acceptance of a mediation award and a judgment on a mediation award are not analogous to a judgment entered after a trial and a verdict by a judge or jury. Thus, judgment on a mediated settlement between a dramshop and a plaintiff should not entitle the dramshop to an opportunity to establish an indemnification claim against the allegedly intoxicated tortfeasor. The proceeding on remand required under *Hoover Corners* would be held to be not necessary and to hamper the ability of the allegedly intoxicated tortfeasor to present a defense were it not for MCR 7.215(H)(1).

Reversed and remanded.

GAGE, J., concurring in part and dissenting in part, stated that while a judgment enforcing a mediation award does not satisfy the dramshop act's prerequisites for indemnification, *Hoover Corners* does not require a remand to permit Verna's the opportunity to demonstrate its liability and establish its right to indemnification. The language employed by the panel in *Hoover Corners* reflecting that panel's choice of procedural disposition was not essential to, or necessarily involved in, determining the issues raised in that case and therefore is not precedentially binding.

INTOXICATING LIQUORS — DRAMSHOP ACTIONS — INDEMNIFICATION OF LICENSEES BY INTOXICATED PERSONS.

A liquor licensee against whom a judgment is entered in a dramshop action has the right to seek indemnification from the alleged visibly intoxicated person only where the judgment resulted from a determination by the trier of fact that intoxication was a proximate cause of the damage, injury, or death sustained (MCL 436.22[4], [7]; MSA 18.993[4], [7], now MCL 436.1801[3], [7]; MSA 18.1175[801][3], [7]).

*Morrison, Morrison & Finley* (by *Gregory W. Finley*), for Verna's Tavern, Inc.

*Wise & Marsac, P.C.* (by *Edward V. Keelean, Sean M. Walsh,* and *Michael A. Sneyd*), for Lawrence Heite.

Before: HOOD, P.J., and GAGE and WHITBECK, JJ.

WHITBECK, J. In these consolidated dramshop act cases, cross-plaintiff Verna's Tavern, Inc., appeals as of right the trial court's order granting summary disposition to cross-defendant Lawrence Heite. Verna's argues that this Court should remand its cross-claims to the trial court with instructions for the trial court to determine Verna's liability so that it can establish its right to indemnification from Heite. We would affirm the order of the trial court were we free to do so. However, as we will discuss more fully in this opinion, MCR 7.215(H) requires us to grant the relief Verna's requests. Accordingly, we reverse and remand the cross-claims so that Verna's can establish its right to indemnification.

### I. BASIC FACTS AND PROCEDURAL HISTORY

These cases arise from an automobile accident in Ash Township, Monroe County, in October 1995. While on his lunch break, Heite left work at the Detroit Edison Company and went to the Riverfront Bar in Monroe, where he drank three beers. He then returned to work, where he remained until midafternoon. When Heite left work later that afternoon, he drove to Verna's, where he drank three beers between 4:00 P.M. and 8:00 P.M. Heite then left Verna's and drove his truck for approximately nine miles before colliding with the automobile Andrew Erving was driving. The collision killed Erving's two passengers, David E. Dunn and Michelle Johnson. Heite was taken to Mercy Hospital in Monroe where laboratory tests

revealed that he had a blood alcohol level of 0.17 percent.

The decedents' families and the personal representatives of the estates of the decedents sued, claiming that Verna's was negligent and acted contrary to the dramshop act, MCL 436.22(4); MSA 18.993(4),[1] when it served Heite alcohol because he was visibly intoxicated at the time. MCL 436.22(4); MSA 18.993(4) provided:

> Except as otherwise provided in this section, an individual who suffers damage or is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action pursuant to this section, the plaintiff shall have the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death.

Verna's filed cross-claims for indemnity against Heite in both cases pursuant to MCL 436.22(7); MSA 18.993(7),[2] which stated at that time:

> Any licensee subject to the provisions of subsection (4) regarding the unlawful selling, furnishing, or giving of alcoholic liquor to a visibly intoxicated person shall have the

---

[1]  1998 PA 58, § 1301 repealed this provision; the provision was reenacted by 1998 PA 58 as MCL 436.1801(3); MSA 18.1175(801)(3).

[2]  1998 PA 58, § 1301 repealed this provision; the provision was reenacted by 1998 PA 58 as MCL 436.1801(6); MSA 18.1175(801)(6).

right to full indemnification from the alleged visibly intoxi-
cated person for all damages awarded against the licensee.

The trial court subsequently consolidated these
cases before submitting them to mediation in June
1997. The mediators' award included a payment of
$25,000 to each decedent's estate by Verna's. The
mediation panel refused to award Verna's any amount
of money on its cross-claims against Heite. Verna's
accepted the $25,000 mediation awards in plaintiffs'
favor but rejected the mediators' determination that it
was not due any amount on its cross-claims. Plaintiffs
accepted the awards in their favor against Verna's.
However, plaintiffs and Heite rejected the $900,000
the mediators awarded. In sum, following mediation,
the parties had resolved the dispute between plain-
tiffs and Verna's, but not between plaintiffs and Heite
or Verna's and Heite.[3]

The trial court entered judgment in October 1997,
formalizing Verna's settlement with plaintiffs. Heite
then moved to dismiss Verna's cross-claims for indem-
nification, arguing that Verna's was not entitled to
indemnification because Verna's had settled with
plaintiffs, there had been no determination of liability,
and no damages had been "awarded" within the
meaning of MCL 436.22(7); MSA 18.993(7). Verna's
then moved for summary disposition on its cross-
claims against Heite pursuant to MCR 2.116(C)(10),
contending that it was entitled to indemnification
from Heite for all damages because the indemnifica-
tion statute does not require an adjudication on the
merits for recovery. Further, Verna's argued that it

---

[3] The other mediation awards and whether the parties accepted them
are not relevant here.

was forced to accept mediation to avoid a potentially larger jury verdict and that it was entitled to indemnification because the sum it paid following mediation was an "award" and constituted an actual loss.

At the hearing on the motions for summary disposition, the parties focused on whether the dramshop act permits indemnification when the plaintiffs and the retail licensee, i.e., the dramshop, settle the litigation rather than going through a trial, after which the court or jury may award damages. Verna's argued that the indemnification provision in MCL 436.22(7); MSA 18.993(7) would be rendered meaningless if, in order to recover, a dramshop had to reject a mediation award and expose itself to mediation sanctions or excessive jury verdicts. Heite, however, argued that the jury in this case might find that he did not proximately cause the accident that killed Johnson and Dunn because Erving was driving at almost one hundred miles an hour at the time their vehicles collided. Therefore, Heite argued, he should not be required to indemnify Verna's for an accident he did not cause and for which he had never been adjudicated as liable or at fault.

The trial court recognized the absence of case law interpreting the dramshop act indemnity provision, MCL 436.22(7); MSA 18.993(7). Nevertheless, it reasoned that because the indemnity provision referred to MCL 436.22(4); MSA 18.993(4), which required the court or the jury to determine "that intoxication was a proximate cause of the damage, injury, or death" before imposing liability, the Legislature intended to require the same manner of findings as a prerequisite to indemnity under MCL 436.22(7); MSA 18.993(7). Further, the trial court held that a retail licensee's

decision to accept a mediation award did not include this determination of liability. Thus, the trial court granted Heite's motion for summary disposition.

In these consolidated appeals, Verna's argues that this Court's opinion in *Hoover Corners, Inc v Conklin*, 230 Mich App 567; 584 NW2d 385 (1998), released after the trial court's decision in this case, requires us to remand for a proceeding in which it can establish its right to indemnification. The procedural posture of this case, however, requires us to determine if the trial court properly granted Heite's motion for summary disposition while denying Verna's motion for summary disposition before we can consider whether remand is appropriate.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

## III. LEGAL STANDARD

When Heite moved for summary disposition under MCR 2.116, he failed to indicate which subsection acted as the foundation for his motion. The trial court's reasoning, which plainly rested on Heite's arguments, suggests that Heite requested and the trial court granted summary disposition pursuant to MCR 2.116(C)(10). Indeed, this is the proper section of the court rule addressing summary disposition because it allows a party to challenge the legal validity of the opponent's claims. That Heite and the trial court did not clarify this technical matter does not affect our

ability to review this issue properly. See *Ellsworth v Highland Lakes Development Associates*, 198 Mich App 55, 57-58; 498 NW2d 5 (1993) ("The mislabeling of a motion does not preclude review where the lower court record otherwise permits it."); see also *Shirilla v Detroit*, 208 Mich App 434, 437; 528 NW2d 763 (1995) ("An order granting summary disposition under the wrong court rule may be reviewed under the correct rule."). Accordingly, we apply the legal standard for motions under MCR 2.116(C)(10) to the issue on appeal.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual basis of a claim other than an amount of damages, requiring the court to consider all the evidence, affidavits, pleadings, admissions, and other information available in the record. *Spiek, supra*; MCR 2.116(G)(5). An order granting a motion for summary disposition is appropriate if the moving party is entitled to judgment as a matter of law. *Waldan General Contractors, Inc v Mich Mut Ins Co*, 227 Mich App 683, 685; 577 NW2d 139 (1998).

### IV. *HOOVER CORNERS*

As Verna's notes, this Court recently interpreted the interaction between the liability and indemnity provisions of the dramshop act in *Hoover Corners, supra*. The plaintiff in *Hoover Corners*, Luke Miller, had been at the Hoover Corners bar when he decided to go to another bar and offered a ride to the defendant, Thomas Conklin, who wanted to go home. *Hoover Corners, supra* at 568. At some point after Conklin got in Miller's truck, they decided to trade places so that Conklin could drive. *Id.* at 568-569. Presumably, when Miller got in the passenger's seat he did not

close the door completely. *Id.* at 569. As a result, when Conklin drove around a curve, Miller fell out of the truck. *Id.* Conklin backed up the truck so Miller could get in, but drove over him instead. *Id.*

In addition to suing his parents, who owned the truck, and Conklin, Miller and his wife sued Hoover Corners. *Id.* at 569. Their theory of Hoover Corners' liability was that it had violated the dramshop act, MCL 436.22(4); MSA 18.993(4), by serving Conklin while he was visibly intoxicated. *Hoover Corners, supra* at 569. Miller and his wife rejected the recommended $45,000 award against Conklin and Miller's parents. *Id.* Conklin also rejected this award. *Id.* However, Miller and Hoover Corners accepted the mediation award for $5,000 to settle their dispute. *Id.* Hoover Corners, which had filed a cross-complaint against Conklin, then asked the trial court to enter judgment on the mediation award and sought indemnity under MCL 436.22(7); MSA 18.993(7) for it by moving for summary disposition pursuant to MCR 2.116(C)(10). Conklin opposed the motion for summary disposition, arguing that indemnity was inappropriate because the issue of his liability had not been tried. *Hoover Corners, supra* at 570. The trial court agreed with Hoover Corners and granted the motion for summary disposition. *Id.*

On appeal, Conklin argued that Hoover Corners would be entitled to indemnification only if there was a judgment following a trial in which the factfinder determined that Hoover Corners sold him alcohol while he was visibly intoxicated and that sale proximately caused the accident. *Id.* at 571. Additionally, he contended, the judgment the trial court entered on the mediators' award was more like a judgment fol-

lowing settlement than a judgment following a verdict and, therefore, did not permit indemnification under MCL 436.22(7); MSA 18.993(7). After briefly tracing the history of the dramshop act, this Court looked at the language of MCL 436.22(7); MSA 18.993(7) and noted that it "clearly and unambiguously indicates that the right to indemnification exists only where damages are 'awarded' against the licensee," and the licensee is " 'subject to the provisions of subsection (4).' " *Hoover Corners, supra* at 572-573. This reference to MCL 436.22(4); MSA 18.993(4) was critical to the indemnification issue because that section "presupposes a determination on the merits of the injured individual's damage claims and an assessment of actual damages by the trier of fact." *Hoover Corners, supra* at 573. The Court then attempted to bring subsections 4 and 7 together so that they worked to form a cohesive statutory scheme, reasoning:

> Reading subsections 4 and 7 together to maintain the internal balance of the act, and according the term "awarded" its plain and ordinary meaning, the language employed evinces an intent by the Legislature that damages be awarded for purposes of indemnification under subsection 7 when monetary compensation is paid to an injured individual for actual damages suffered under the conditions specified in subsection 4, *as determined by a trier of fact after consideration of the merits of the injured individual's damage claims.* Such a construction of subsection 7 protects the allegedly visibly intoxicated person from *collusion between the injured individual and the licensee,* much in the same way the name-and-retain provision protects the licensee from collusion between the injured individual and the visibly intoxicated person. *Browder [v Int'l Fidelity Ins Co,* 413 Mich 603, 615; 321 NW2d 668 (1982)]. This construction of subsection 7 also discourages a party from negotiating away its legitimate defenses, as Conklin

claims Hoover Corners did here, because it is assured of
indemnification from a third party. [*Hoover Corners, supra*
at 573 (emphasis added).]

Applying this reasoning to the case before it, this
Court in *Hoover Corners* analyzed whether a judg-
ment on a mediation award was sufficiently similar to
a judgment entered on a verdict following a trial to
justify treating it as the type of disposition required
under MCL 436.22(4); MSA 18.993(4). *Hoover Cor-
ners, supra* at 574. The Court unequivocally con-
cluded that "[a]lthough an accepted mediation evalua-
tion serves as a final adjudication of the claims medi-
ated and is binding on the accepting parties, the
acceptance of a mediation award is not analogous to
a judgment entered after a trial and a verdict by a
judge or jury." *Id.* Rather, the Court determined, "a
mediation proceeding that ends with the parties'
acceptance of the mediators' evaluation is like a con-
sent judgment reached after negotiation and settle-
ment." *Id.* Accordingly, the Court held that the judg-
ment following the plaintiffs' decision to accept the
mediators' award did not automatically entitle Hoover
Corners to indemnification from Conklin. *Id.* at 575.

Before concluding the *Hoover Corners* opinion, the
Court explained the competing principles that shaped
its decision and hardened its resolve to obey the plain
language of the dramshop act, stating:

We recognize that the mediation process and Michigan
law generally favor settlement of disputes. We also note
that dramshops will be less likely to settle claims brought
by injured persons if there is no automatic right to indemni-
fication against the person whose intoxication allegedly
caused the injury. Nevertheless, the language of the statute
and principles of basic fairness prevent the allegedly intoxi-

cated person from being bound by a settlement reached
between the other parties. [*Id.* at 576.]

The Court did, however, note that the parties to a
dramshop action may avoid these complex issues by
settling all issues, including indemnity. *Id.* at 576, n 3.
In conclusion, the Court reversed the trial court's
order granting Hoover Corners summary disposition
and remanded the case "for further proceedings to
determine the merits of the claim against Hoover Cor-
ners wherein Conklin shall be afforded the right to
raise defenses that Hoover Corners might have raised
had the underlying dramshop action proceeded to
trial." *Id.* at 576. The Court never clarified the nature
of the proceedings on remand, including whether the
hearing in which Hoover Corners would have the
opportunity to establish its liability for the purposes
of indemnification would be similar to a trial. More
importantly, the Court left unresolved how to harmo-
nize its disposition of the case with its eloquent
exploration of the contrary interests a dramshop has
in admitting liability in order to receive indemnifica-
tion and the effect that process may have on the
allegedly intoxicated person.

### V. VERNA'S APPEAL

The parallels between *Hoover Corners* and this
case are close, numerous, and obvious. As in *Hoover
Corners*, there was a serious accident after defendant
allegedly consumed alcohol in a bar. As in *Hoover
Corners*, the dramshop in this case, Verna's, accepted
a mediation award in favor of plaintiffs, foreclosing
the need for a trial on plaintiffs' claims. As in *Hoover
Corners*, Verna's moved for summary disposition on

its cross-claim for indemnification against the allegedly intoxicated tortfeasor, Heite. This, however, is where the parallels between the cases end.

In *Hoover Corners*, the trial court *granted* the dramshop's motion for summary disposition on its cross-claim for indemnification from the allegedly intoxicated person. As a result, the trial court required the allegedly intoxicated person to indemnify the dramshop, and the alleged tortfeasor then appealed. Here, the trial court *denied* the dramshop's motion for summary disposition on its cross-claim for indemnification from the allegedly intoxicated person, and the dramshop appeals.

The record in this case reveals that there was no open question of fact concerning whether plaintiffs would accept the mediators' award. Accordingly, there was no question concerning whether there would be a trial to determine Verna's liability. With no possibility of a trial to determine liability, the trial court properly denied summary disposition in Verna's favor. Although this Court had not yet decided *Hoover Corners*, the legal principles underlying our conclusion that a judgment enforcing a mediation award does not satisfy the statutory prerequisites for indemnification existed. As a result, it is not surprising that the trial court's ruling was consistent with the reasoning in *Hoover Corners*; under the rationale advanced in *Hoover Corners*, Heite *was* entitled to judgment as a matter of law and Verna's was *not* entitled to judgment as a matter of law.

If we looked no further, our analysis would end here with a decision to affirm the order of the trial court, especially because Heite's arguments so closely mirror the arguments that persuaded this Court in

*Hoover Corners.* However, Verna's essentially asks
this Court to rule that a dramshop is automatically
entitled to indemnification any time it settles with an
injured plaintiff, albeit after a separate hearing. We
agree with Heite that this makes little sense and is
not within the plain meaning of the language of the
dramshop act. By settling its own liability with the
plaintiff and then pursuing a separate indemnification
claim against the allegedly intoxicated tortfeasor, a
dramshop forecloses a genuine determination of lia-
bility in which the dramshop must mount a substan-
tive defense rather than attempting to establish its
own wrongdoing. In other words, under Verna's
approach, after a dramshop has *denied* liability in its
answer, it is in that dramshop's best interest to settle
any potential claims with the underlying plaintiff and
then to *admit* liability aggressively in order to place
the burden of the settlement on the allegedly intoxi-
cated person.

The facts of this case show how such a system
would force a dramshop to make arguments intended
to place full responsibility for settlement costs on the
allegedly intoxicated person, regardless of the merit
of the plaintiff's claims. Verna's *denied* liability up to
the time it accepted the mediation award but now
argues that a wide range of evidence demonstrates
that Heite *was* visibly intoxicated when one of
Verna's employee served him alcohol before the acci-
dent. In fact, Verna's goes so far as to argue that its
employees still serve indisputably visibly intoxicated
people, which it apparently relies on in an attempt to
show what poor judgment its employees used on the
night it served Heite, who was, allegedly, visibly
drunk. Given a dramshop's strong incentive to prove a

defendant's visible intoxication, this leaves virtually no way for Heite or any other allegedly intoxicated person to present a defense. More importantly, nothing in MCL 436.22; MSA 18.993 as a whole even remotely suggests that the Legislature intended to allow a tavern to take an adverse, and arguably disingenuous, position in a separate indemnification proceeding.

Verna's argues that not allowing a separate proceeding would eliminate the possibility of settlement while forcing dramshops to take the risk of a substantial jury verdict and mediation sanctions. However, as in all cases, each party must weigh its potential liability before settling or going forward with a trial on the merits. As the *Hoover Corners* panel noted, nothing precludes a dramshop from settling the indemnity question just as it would settle liability with the injured plaintiff. In any event, any advantage that would flow from allowing this separate hearing to establish the right to indemnification after a dramshop accepts a mediation award would be outweighed by haphazard and indifferent settlement negotiations aimed at admitting a dramshop's liability simply so it can move to this indemnification phase.

For all these reasons, we would adhere to the general ruling in *Hoover Corners* and deny Verna's the right to seek indemnification from Heite now because it accepted the mediation award. Nevertheless, *Hoover Corners* ordered a remand to allow the dramshop an opportunity to prove its liability to establish its right to indemnification. We are not convinced that such a proceeding is necessary. Nor are we at all clear how the trial court should conduct such a pro-

ceeding.[4] In our view, a claim for indemnification under MCL 436.22(7); MSA 18.993(7) cannot survive a settlement, especially if the settlement occurred because of mediation, given the reasoning in *Hoover Corners*.

. Unfortunately, we see no logical grounds on which to distinguish this case from *Hoover Corners* given the identical procedural histories and the identical legal questions in both cases. See *People v Kevorkian*, 205 Mich App 180, 190, n 6; 517 NW2d 293 (1994) (portions of an opinion are nonbinding as obiter dicta as long as they are "not necessarily involved nor essential to [the] determination" of the case). MCR 7.215(H)(1) plainly requires us to follow precedent set by another panel of this Court in cases issued after November 1, 1991, and this applies to the 1998 *Hoover Corners* decision. Thus, we are compelled to follow the result the *Hoover Corners* panel reached because it is essential to the Court's determination in that case.

But for the result in *Hoover Corners*, we would affirm the trial court's decision in its entirety. We reluctantly reverse the trial court's order granting summary disposition in favor of Heite and remand for further proceedings in which Verna's may attempt to

---

[4] For example, the *Hoover Corners* panel did not indicate whether the required "further proceedings" would be held before the trial judge in a manner similar to a hearing on a motion for summary disposition or if the proceeding would be held in front of a jury. If the matter is to be tried before a jury, it is difficult to understand how the trial court would instruct the jury on the question of witness credibility given that, in order to obtain indemnification from Heite, Verna's presumably would attempt to establish that it *violated* the dramshop act by furnishing alcohol to a visibly intoxicated person. Further, which party has the burdens of proof and persuasion in this proceeding, and what each burden entails, is very much up in the air at this point.

establish its liability as a prerequisite to its right to indemnification. Heite may raise any defense Verna's could have raised had this case gone to trial on the underlying question whether Verna's served him alcohol while he was visibly intoxicated. We do not retain jurisdiction.

HOOD, P.J., concurred.

GAGE, J. (*concurring in part and dissenting in part*). I agree with the lead opinion's analysis and conclusion that a judgment enforcing a mediation award does not satisfy the dramshop act's prerequisites for indemnification. MCL 436.22; MSA 18.993.

I respectfully dissent from the lead opinion's conclusion that *Hoover Corners, Inc v Conklin*, 230 Mich App 567; 584 NW2d 385 (1998), requires that we remand the instant case to permit Verna's Tavern the opportunity to demonstrate its liability and establish its right to indemnification. I endorse the majority's expressed view that "a claim for indemnification under MCL 436.22(7); MSA 18.993(7) cannot survive a settlement," *ante* at 593, and thus, like the majority, I fail to comprehend the necessity or nature of a proceeding on remand. Unlike the majority, however, I do not view *Hoover Corners'* penultimate sentence reflecting the panel's choice of procedural disposition as essential or necessarily involved in determining the legal issues the *Hoover Corners* parties raised. *People v Kevorkian*, 205 Mich App 180, 190, n 6; 517 NW2d 293 (1994). Accordingly, I do not believe *Hoover Corners* demands the unnecessary remand.

I would affirm.