AUTO CLUB INSURANCE ASSOCIATION v STATE FARM INSURANCE
COMPANIES

Docket No. 173738. Submitted November 15, 1995, at Grand Rapids.
Decided January 21, 1997, at 9:10 A.M.

    Auto Club Insurance Association brought an action in the Muskegon
Circuit Court against State Farm Insurance Companies, Omega
Communications, and others, seeking reimbursement of $47,658.09
in no-fault benefits paid for injuries sustained in a July 21, 1991,
automobile accident by Jennifer Schneider, the minor child of Ross
and Wanda Schneider. At the time of the accident, Ross and Wanda
Schneider were separated (they were subsequently divorced on
August 4, 1992), Jennifer Schneider lived with Wanda Schneider
(who was not covered by a no-fault insurance policy), Ross Schnei-
der was covered by a no-fault policy from State Farm, Ross Schnei-
der and his children were covered by an employee-benefits plan
from Omega (Ross Schneider's employer), and Auto Club was the
no-fault insurer of the driver of the car in which Jennifer Schneider
sustained her injuries. State Farm filed a cross-claim for indemnifi-
cation by Omega should State Farm be found liable. Following a
mediation evaluation of $48,000 in favor of Auto Club, State Farm
accepted the mediation evaluation against it and settled with Auto
Club for $24,000. The court, Ronald H. Pannucci, J., on the parties'
motions for summary disposition based on stipulated facts, deter-
mined that Omega was solely liable for the medical benefits at
issue and granted summary disposition for Auto Club and entered a
judgment in its favor and against Omega for $23,658.09, plus pre-
judgment interest calculated at twelve percent and attorney fees.
The court also granted summary disposition for State Farm and
against Omega, ordering Omega to reimburse State Farm for the
$24,000 settlement it reached with Auto Club. Omega appealed.

    The Court of Appeals *held*:

    1. Jennifer Schneider was not a covered dependent under the
Omega employee-benefits plan at all times relevant to this dispute.
The Omega plan provides that a child of a participating employee is
eligible for health-care coverage if the child, among other things,
resides with the employee. The plan provides an exception to the
residency requirement if the employee is required to provide
health-care coverage by court order or divorce decree. The recom-

mendation by the friend of the court that Ross Schneider provide health-care coverage to his children pending the Schneiders' divorce did not constitute a court order to provide coverage. Jennifer Schneider was not a covered dependent under the Omega plan until Ross Schneider was required to provide health-care coverage to his children under the August 4, 1992, judgment of divorce. Auto Club was solely obligated to provide coverage to Jennifer Schneider from July 21, 1991, through August 3, 1992. On August 4, 1992, Omega became primarily liable pursuant to the coordination of benefits provision of its employee-benefits plan, which provides that when all applicable plans have a coordination of benefits provision (as the Auto Club policy does), the plan that covers the participant as an employee pays first. The case must be remanded to the trial court for proration of Jennifer Schneider's medical expenses between Auto Club and Omega.

2. Auto Club cannot properly claim that Omega is estopped from denying coverage during the period between the accident and the August 4, 1992, judgment of divorce. Ross and Jennifer Schneider are the only parties who can raise equitable estoppel against Omega, and they did not assign their right to raise that claim to Auto Club. Omega must nevertheless refund premium payments made by Ross Schneider before August 4, 1992, to cover his children when they could not be covered dependents because they did not reside with him.

3. Omega's assertion that the subrogation provision in its plan prevents Auto Club from recovering any benefits because the benefits in question were paid pursuant to the no-fault act and not because Auto Club's insured was negligent is rejected. MCL 500.3107; MSA 24.13107.

4. State Farm, as Ross Schneider's no-fault insurer, was not legally obligated to reimburse Auto Club under the priority provisions of MCL 500.3114(1); MSA 24.13114(1) inasmuch as Jennifer Schneider was not domiciled in Ross Schneider's household at the time of the accident. Nevertheless, State Farm may not seek reimbursement from Auto Club or Omega for the $24,000 it voluntarily paid to Auto Club pursuant to the mediation evaluation. The acceptance of a mediation evaluation is legally equivalent to a consent judgment reached after negotiation and settlement. Because Omega did not benefit from the settlement between Auto Club and State Farm, and State Farm did not prevail in an indemnification claim against Omega, State Farm cannot seek recoupment from Omega.

5. The award of attorney fees in favor of Auto Club and against Omega is not authorized by statute or court and therefore represents an abuse of discretion by the trial court.

6. The trial court correctly awarded Auto Club prejudgment interest at twelve percent pursuant to MCL 600.6013(5); MSA 27A.6013(5), which governs interest on a money judgment recovered in a civil action for a complaint rendered on a written instrument. Both Auto Club's policy and Omega's employee-benefits plan are written instruments for purposes of § 6013(5). However, in light of this Court's findings and conclusions, interest due Auto Club must be recalculated.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — EMPLOYER-PROVIDED HEALTH PLANS — COVERED DEPENDENTS — DIVORCE — COURT ORDERS.

A recommendation by the friend of the court that a parent maintain employer-provided health insurance coverage for a dependent minor child who resides with the other parent while the parents' divorce is pending is not the equivalent of a court order to provide coverage such that the child would qualify as a covered dependent under a health insurance plan that allows coverage for dependent minor children who are not residents of the employee's household when coverage is required by court order.

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — RELATIVES OF NAMED INSURED

The relative of a named insured must be domiciled in the same household as the named insured in order for the relative to be covered for personal protection insurance under the named insured's policy (MCL 500.3114[1]; MSA 24.13114[1]).

3. PRETRIAL PROCEDURE — MEDIATION — ACCEPTANCE OF EVALUATIONS.

The acceptance of a mediation evaluation is legally equivalent to a consent judgment reached after negotiation and settlement; a party who accepts a mediation decision is not an aggrieved party and has no right to appeal the mediation decision (MCR 2.403[M]).

4. COSTS — ATTORNEY FEES — AMERICAN RULE.

A trial court may not award a prevailing party its attorney fees as costs or damages unless the award is authorized by statute or court rule.

5. INTEREST — MONEY JUDGMENTS — WRITTEN INSTRUMENTS.

A money judgment recovered in a civil action on an automobile insurance policy or an employer-provided health insurance plan is a money judgment rendered on a written instrument and is subject to

statutory prejudgment interest of twelve percent a year compounded annually (MCL 600.6013[5]; MSA 27A.6013[5]).

*Smith, Haughey, Rice & Roegge* (by *Jon D. Vander Ploeg*), for Auto Club Insurance Association.

*Reider & Brown, P.C.* (by *Darrel G. Brown*), for State Farm Insurance Companies.

*Kluczynski, Girtz & Vogelzang* (by *Richard Radke, Jr.*, and *Kevin J. O'Dowd*), for Omega Communications.

Before: DOCTOROFF, C.J., and MICHAEL J. KELLY and MARKEY, JJ.

MARKEY, J. Defendant Omega Communications, doing business as Cable Vision, Inc., appeals as of right from the trial court's judgment entered upon competing motions for summary disposition, supported by the parties' stipulated facts, finding in favor of plaintiff Auto Club Insurance Association as against Omega and in favor of defendant State Farm Insurance Companies as against Omega. We affirm in part and reverse in part.

This appeal stems from a dispute regarding which insurer has the duty to provide coverage for injuries that Jennifer Schneider suffered in an automobile accident on July 21, 1991. At that time, Jennifer, a minor, was living with her mother, Wanda, who did not have no-fault insurance. Her parents were estranged. Because plaintiff was the no-fault insurance provider for the driver of the vehicle in which Jennifer was riding when the accident occurred, it paid $47,658.09 in no-fault benefits on her behalf. Plaintiff subsequently sought reimbursement from Omega, which provided health benefits to Ross

Schneider, Jennifer's father, under an ERISA[1] employee welfare benefit plan, and State Farm, which provided no-fault coverage to Ross Schneider. State Farm cross-claimed against Omega for indemnity if it were found liable to plaintiff. After the case was mediated in plaintiff's favor for $48,000, State Farm settled with plaintiff for $24,000.

At the hearing on the parties' motions for summary disposition, the trial court found that Omega was solely liable for providing medical coverage to Jennifer because the ERISA plan provided coverage for employees' nonresident dependents if a court order or divorce decree specifies that the employee must provide coverage. The court found that the policy of this state, as set forth in *Tousignant v Allstate Ins Co*, 444 Mich 301, 303; 506 NW2d 844 (1993), and *Owens v Auto Club Ins Ass'n*, 444 Mich 314, 317; 506 NW2d 850 (1993), supports the conclusions that medical expenses are to be borne by health-care providers, even when people are injured in automobile accidents, that Omega is estopped from denying dependent coverage because it accepted dependent-care premiums from Ross Schneider while he was separated and effectively divorced from his wife, that Omega's coordination of benefits (COB) provision should be liberally construed to include the friend of the court's recommendation that Schneider pay for his daughter's insurance coverage as constituting a court order, and that plaintiff is not seeking to exercise subrogation rights against defendants. Accordingly, the trial court granted plaintiff's motion for

---

[1] Employee Retirement Income Security Act of 1974, 29 USC 1001 *et seq.*

summary disposition and entered judgment for plaintiff against Omega in the amount of $23,658.09, with $3,075.54 in prejudgment interest, calculated at twelve percent, and $5,000 in attorney fees. The court also granted State Farm's motion for summary disposition and ordered Omega to reimburse State Farm in the amount of $24,000, representing the amount State Farm paid to plaintiff pursuant to mediation. Omega appeals from these awards.

I

First, Omega asserts that the trial court erred in concluding that Jennifer Schneider was a covered dependent within the plan's eligibility requirements; as a result, Omega was held solely responsible for Jennifer's medical bills. Upon review de novo, we partially agree. See *Vargo v Sauer*, 215 Mich App 389, 398; 547 NW2d 40 (1996).

Pursuant to the Omega plan's choice-of-law provision, the plan must be construed according to the ERISA and Indiana law. In Indiana, it is the court's main duty to ascertain the intent of the parties and give the language of an insurance policy its plain and ordinary meaning. *First Federal Savings Bank of Indiana v Key Markets, Inc*, 559 NE2d 600, 603 (Ind, 1990); *Aetna Life & Casualty v Patrick Industries, Inc*, 645 NE2d 656, 659 (Ind App, 1995). The residency requirement of the plan provides that a child of a participating employee is eligible for health-care coverage if the unmarried child who is financially dependent on the employee for more than one-half of the child's annual support and who is under 19 (or under 25 if a full-time college student) "[r]esides with the Employee." An exception to this residency requirement states that

"[t]he residency and support requirements as pertain [sic] to an unmarried natural child of the participant are waived if the participant is required to provide coverage due to court order or divorce decree." Omega's plan also contains a COB provision, which states as follows:

> Order of Benefit Determination: If a person is a Participant under this Plan and another plan at the same time, the Plans will pay benefits in this order:
> a. Any Plan that has no Coordination of Benefits provision will pay first.
> b. When all Plans have a Coordination of Benefits provision, the Plan that covers the participant as an employee will pay first.

The term "plan" is defined within Omega's policy to mean "any policy, contract, or other arrangement to pay the cost of Medical, Dental, or Vision Care," including "any [policy under the] No Fault Automobile Act or similar law."

Although the stipulation of facts that the court used as the basis of its summary disposition ruling contained no reference to the existence or nonexistence of a COB clause in plaintiff's no-fault policy, this Court on its own motion remanded the case to the trial court with instructions to ascertain whether plaintiff's policy contained a COB clause. At the conclusion of the hearing on remand, counsel for all parties acknowledged that plaintiff's policy in effect on July 21, 1991, contained a "coordinated medical benefits" personal protection insurance endorsement. In light of plaintiff's COB provision and the residency requirement in Omega's policy, we believe that plaintiff and Omega share responsibility for Jennifer Schneider's insurance coverage.

On July 21, 1991, the date of the accident, Jennifer was not residing with Ross Schneider, who was a participant in Omega's ERISA plan. Before the accident, several support orders had been entered providing Jennifer's mother with support payments for the benefit of Jennifer and her brother, but none of these court orders required Ross Schneider to provide health-care coverage to Jennifer. Under Indiana law, a court order is defined as "a judgment or conclusion of the court on any motion or proceeding by which affirmative relief is granted or relief is denied." *Dep't of Revenue v Estate of Callaway*, 232 Ind 1, 9; 110 NE2d 903 (1953), citing *McMillan v Plymouth Electric Light & Power Co*, 70 Ind App 336, 341; 123 NE 446 (1919). A divorce decree is a type of judgment. Indiana Trial Rule 54(A). Applying Indiana law, we do not believe that the friend of the court's "recommendation" to Ross Schneider that he continue paying for his children's health insurance constitutes a "court order" for purposes of the Omega plan's residency exception.[2]

---

[2] We note that this Court arguably could have interpreted the September 7, 1990, interim support order to require that Ross Schneider continue to pay for his nonresident children's health-care coverage for three reasons. First, MCL 722.3(6); MSA 25.244(3)(6) provides that

> [a] judgment entered under this section providing for support of a minor *shall require* that 1 or both parents shall obtain or maintain any health care coverage that is available to them at a reasonable cost, as a benefit of employment, for the benefit of the minor and, subject to section 3a, for the benefit of the parties' children who are not minor children. [Emphasis added.]

Thus, the child support orders should have mandated that someone provide the children's health insurance but, contrary to this statutory mandate, did not. Second, the stipulated facts established that Ross Schneider paid for his children's continued health coverage on and before July 21, 1991. Third, the September 7, 1990, interim support order required him to pay ninety percent of all "uninsured health care expenses," which would

In contrast, we find that on August 4, 1992, slightly over one year after the accident, the Mason Circuit Court entered a judgment of divorce *requiring* Ross Schneider to provide health insurance coverage for his children, including Jennifer. Accordingly, as of August 4, 1992, Jennifer Schneider qualified under the Omega plan's nonresident dependent exception and was entitled to coverage as of that date. Given that Jennifer Schneider was covered by both Omega's plan and plaintiff's policy on August 4, 1992, we then look to the plan and policy language to establish an order of priority between these insurers. Although the stipulation of facts did not specify whether plaintiff's policy contained a COB clause, all parties conceded at the hearing upon remand that plaintiff's policy contained one. As quoted above, Omega's COB states that any uncoordinated plan is primary. Here, however, because both plaintiff's and Omega's plans are coordinated, Omega "will pay first" as "the Plan that covers the participant as an employee." We therefore hold that plaintiff was solely obligated to provide insurance coverage to Jennifer Schneider from July 21, 1991, through August 3, 1992, but Omega became primarily liable when the divorce decree was entered on August 4, 1992. In the absence of any medical records to establish when medical bills were incurred, we must remand this case to the trial court for a proration of medical expenses between plaintiff and Omega.

---

support the implied obligation to pay all of the children's health-care insurance expenses. We will not, however, consider these arguments to impose liability on Omega in this case given the uncontroverted language of the support order and the parties' stipulated fact that there existed no "order" requiring Schneider to provide health coverage.

With respect to benefits that plaintiff paid between July 1991 and August 1992, we also find that equitable estoppel does not apply as against Omega. According to the prevailing federal common-law doctrine concerning equitable estoppel, plaintiff must show (1) conduct or language amounting to a representation of material fact, (2) awareness of the true facts by the party to be estopped, (3) an intention on the part of the offending party that its representations be acted on or that its *conduct toward the party asserting estoppel* was such that the latter had a right to believe that the former intended its conduct, (4) unawareness of the true facts by the *party asserting estoppel,* and (5) detrimental and justifiable reliance *by the party asserting estoppel* on the representation. *Tregoning v American Community Mutual Ins Co,* 12 F3d 79, 83 (CA 6, 1993). Plaintiff cannot establish all the necessary elements for equitable estoppel because Ross Schneider, not plaintiff, is the proper party to assert the estoppel, and Omega and Schneider, not Omega and plaintiff, were in privity of contract. We find nothing in the stipulation of facts or the pleadings to establish that Jennifer or Ross Schneider assigned to plaintiff any equitable estoppel claim either had against Omega. Accordingly, plaintiff cannot successfully assert equitable estoppel against Omega.[3] *Id.*

---

[3] On the other hand, the facts in this case do demonstrate that Ross Schneider would likely have a strong argument that Omega should be equitably estopped from denying or limiting coverage to Jennifer Schneider for any times after August 4, 1992, and when she was a covered dependent for a "pre-existing condition." Under the heading "Maximum Comprehensive Medical Benefit," section V of Omega's group medical plan provides that the maximum benefit to be paid for a condition "for which a Participant has received medical treatment or taken medications within a twelve month period prior to the effective date of Participation shall be $1,000 until the earliest of these events: . . . (iii) for a Dependent, twelve

Nonetheless, because Omega accepted Schneider's premium payments on his children's behalf, these premium payments should be refunded to Schneider for the time before August 4, 1992, and when Jennifer and her brother were not residing with their father.

Finally, we reject Omega's assertion that the subrogation provision within its plan prevents plaintiff from recovering any benefits because the benefits in question were paid pursuant to the no-fault act and not because plaintiff's insured was negligent. MCL 500.3107; MSA 24.13107.

II

Second, Omega asserts that it has no obligation to reimburse State Farm where State Farm was not legally obligated to reimburse plaintiff. We agree. Implicit in this issue is the question whether plaintiff could pursue recovery from State Farm for benefits paid to Jennifer Schneider because State Farm was Ross Schneider's no-fault insurer. We find that plaintiff was not entitled to recoupment from State Farm. We also find that State Farm may not recover from either plaintiff or Omega the amount it paid to plaintiff pursuant to the mediation-induced settlement.

If an insurance company claiming recoupment is found to be at a higher level of priority with respect to providing coverage than the company from which recoupment is sought, that higher priority insurer is not entitled to recoupment. *Allstate Ins Co v Transamerica Ins Co*, 138 Mich App 782, 786-787; 360 NW2d 925 (1984). Although MCL 500.3114(1); MSA

consecutive months of participation under this Plan." We offer this as guidance to the parties on remand.

24.13114(1) mandates that the policy covering "the person named in the policy, the person's spouse, and a relative of either domiciled in the same household" shall have priority in the event one of these persons is injured in a motor vehicle accident, it is conceded that Jennifer Schneider was not residing with Ross Schneider, State Farm's named insured, on July 21, 1991. According to *Citizens Mutual Ins Co v Community Services Ins*, 65 Mich App 731, 732-733; 238 NW2d 182 (1975), while MCL 500.3114(1); MSA 24.13114(1) does not require that an insured's spouse be domiciled with the insured, any relative or child of the insured or the insured's spouse must be domiciled in the named insured's household to trigger no-fault coverage. We believe that this Court's construction of MCL 500.3114(1); MSA 24.13114(1) set forth in *Citizens, supra*, is the more accurate interpretation, despite the decisions in *Bierbusse v Farmers Ins Group of Cos*, 84 Mich App 34, 35-38; 269 NW2d 297 (1978), and *Smith v Auto-Owners Ins Co*, 123 Mich App 585, 588; 332 NW2d 620 (1983), which found that "[w]hen a couple is separated pending divorce and one spouse is the named insured on a no-fault policy, the other spouse and the children of the named insured are covered by the no-fault policy, even though they are domiciled in separate households, until the divorce is finalized." *Bierbusse, supra* at 37-38. We therefore hold that State Farm was not liable for first party no-fault benefits for Jennifer Schneider because on July 21, 1991, she was not a resident relative of its named insured, Ross Schneider.

Nevertheless, we also find that State Farm is not entitled to receive reimbursement from either plaintiff or Omega because it voluntarily paid plaintiff $24,000

in settlement of any claims plaintiff may have had against it as a result of the $24,000 mediation award entered in favor of plaintiff and against State Farm. Pursuant to MCR 2.403(M)(2), State Farm and plaintiff could enter into a judgment between themselves because they accepted the portions of the mediation evaluation that applied to them. MCR 2.403(M)(1) also states that judgment entered pursuant to mediation "shall be deemed to dispose of all claims in the action and includes all fees, costs, and interest to the date of judgment." The acceptance of a mediation evaluation is legally equivalent to a consent judgment reached after negotiation and settlement. *Klawiter v Reurink*, 196 Mich App 263, 266; 492 NW2d 801 (1992). For all practical purposes, the parties entered into a settlement agreement under the mediation rules. 2 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed, 1996 Cum Supp), pp 136-137. Further, because a party who accepts a mediation decision is not an "aggrieved party," that party has no right to appeal that mediation decision, *Joan Automotive Industries, Inc v Check*, 214 Mich App 383, 389-390; 543 NW2d 15 (1995), and no right to ask for a refund of the settlement amount. Accordingly, plaintiff is entitled to retain the settlement amount that State Farm paid to it in full resolution of any and all claims that plaintiff had or may have had against State Farm. Because Omega did not benefit from the settlement between plaintiff and State Farm, and State Farm did not prevail in an indemnification claim against Omega, State Farm cannot seek recoupment from Omega.

## III

Third, Omega argues that the trial court erred in awarding plaintiff attorney fees because neither court rule nor statute supports the award. We agree.

We will uphold the trial court's award of attorney fees absent an abuse of discretion, i.e., where an unprejudiced person, considering the facts upon which the trial court acted, would say there was no justification or excuse for the ruling. *Cleary v Turning Point*, 203 Mich App 208, 210-211; 512 NW2d 9 (1994). Under the "American rule," a trial court may not award a prevailing party its attorney fees as costs or damages unless the award is authorized by statute or court rule. *Giannetti v Cornillie (On Remand)*, 209 Mich App 96, 102-103; 530 NW2d 121 (1995); *Burnside v State Farm Fire & Casualty Co*, 208 Mich App 422, 426-427; 528 NW2d 749 (1995). The award may be authorized by judicial exception, but these exceptions are narrowly construed. *Burnside, supra* at 427. Here, the trial court determined that Omega was liable for plaintiff's attorney fees as costs because Omega acted unreasonably when it denied plaintiff's claim for recoupment, while plaintiff had performed as the Legislature intended. Although the no-fault act permits the awarding of attorney fees if an insurer unreasonably denies coverage for its insured, MCL 500.3148(1); MSA 24.13148(1), this statutory provision is inapplicable where, as in the present case, the insurer in question is not a no-fault insurance provider. See *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 140; 485 NW2d 695 (1992).

Moreover, the recovery of attorney fees incurred as a result of an insurer's bad-faith refusal to pay an

insured's claim is governed by the American rule. *Burnside, supra* at 430; *Murphy v Cincinnati Ins Co,* 772 F2d 273 (CA 6, 1985). Also, despite the trial court's determination that public policy supported the award of attorney fees to plaintiff,[4] the court's rationale is not supported by statute, court rule, or judicial exception. *Giannetti, supra* at 102-103. Accordingly, we must find that the trial court abused its discretion in ordering Omega to pay plaintiff's attorney fees. *Cleary, supra.* We therefore vacate the award.

---

[4] In explaining its rationale for awarding plaintiff its attorney fees, the court made the following observations:

[I] am going to award all attorney fees of plaintiff to be paid by . . . Omega, et cetera. The reason for that is: Under this so-called no-fault arena, the [L]egislature was sold a bill of goods like the public, in that carriers were going to pay, and here is a situation—and I have been very critical of this plaintiff over the years, but they did what they were supposed to do—boom—paid the freight—big numbers—and now, as a matter of law, right or wrong, this Court found that they weren't the ones that had to pay the freight—that another person, or entity, had to pay the freight—the health care provider.

The conduct on the part of the plaintiff should be commended. They did that which they were supposed to do. By filing suit and incurring additional attorney fees and expenses, to go after their money, . . . if they prevail, they should be rewarded; and as far as this Court is concerned, the refusal of the health-care provider all along not to pay is unreasonable—totally unreasonable. . . .

Alternatively, in the event the Court is in error, the Court finds that based upon these facts and this case, when we are dealing with company against company, that public policy must be such, or should be such, that attorney fees must be paid and awarded to plaintiff against defendant to encourage companies to go out on the limb—even in questionable cases—and pay and go after somebody else, because we've got people who—or hospitals, or somebody—who is out a bundle of dollars, and then companies fighting over who was to pay or who was not. While people are fighting, little old John Doe Citizen gets dunning letters, et cetera.

While we understand the court's sentiments and good intentions, we are constrained by the law to reverse the award.

IV

Finally, Omega argues that the trial court erred in awarding plaintiff twelve percent prejudgment interest because its health insurance plan was not a "written instrument" within the meaning of MCL 600.6013(5); MSA 27A.6013(5). We disagree.

The determination whether a statutory provision applies to a given action is purely a legal question to be resolved by statutory interpretation and reviewed by this Court de novo. *Yaldo v North Pointe Ins Co,* 217 Mich App 617, 619; 552 NW2d 657 (1996). Under MCL 600.6013(5); MSA 27A.6013(5), the interest on a money judgment recovered in a civil action for a complaint "rendered on a written instrument" shall be calculated from the date the complaint was filed to the date judgment is satisfied at the rate of twelve percent a year compounded annually, unless the instrument has a higher rate of interest. This Court held in *Yaldo, supra* at 621, that the term "written instrument" contained in § 6013(5) constitutes an agreement or understanding reduced to writing as a means of giving formal expression to an act or contract, which includes an insurance policy. The purpose of the prejudgment interest statute is to compensate the prevailing party for the delay in recovering money damages. *Id.* at 623. We therefore find that plaintiff's no-fault plan and Omega's ERISA-based health-care plan are "written instruments" and that judgment herein is based upon the language contained in those written instruments. *Id.* at 621. Further, we find nothing in the language of the statute or the common law that precludes its application to a health-care insurer. Therefore, we conclude that the trial court correctly awarded plaintiff twelve percent prejudgment interest

pursuant to MCL 600.6013(5); MSA 27A.6013(5),[5] but we also note the amount of interest due must now be recalculated on the basis of this Court's findings and conclusions. *Yaldo, supra.*

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Also, because plaintiff has not prevailed on all counts, we do not award plaintiff its costs and fees associated with this appeal MCR 7.219.

---

[5] See also MCL 500.2006(1); MSA 24.12006(1) of the Uniform Trade Practices Act, which awards twelve percent penalty interest if an insurer fails to pay claims to its insured or a third-party tort claimant on a timely basis. The penalty interest begins to run from sixty days after the offending insurer received the proof of loss. *Yaldo, supra* at 622. Notably, the penalty interest contained in MCL 500.2006(4); MSA 24.12006(4) applies for a longer period than the standard prejudgment interest on a written instrument under MCL 600.6013(5); MSA 27A.6013(5). *Yaldo, supra.* We agree with the dicta contained in *Yaldo, supra* at 622, n 1:

> Even if MCL 600.6013(5); MSA 27A.6013(5) did not apply, it appears that MCL 500.2006(4); MSA 24.12006(4) would apply because defendant failed to timely pay under the terms of the insurance contract. Therefore, the trial court's determination that the interest rate on the judgment should be twelve percent would have been proper although not based on the proper statute. This Court will not reverse the decision of a trial court where the right result is reached for the wrong reason. *Welch v District Court,* 215 Mich App 253, 256; 545 NW2d 15 (1996).