HOOVER CORNERS, INC v CONKLIN

Docket No. 200241. Submitted February 4, 1998, at Lansing. Decided July 7, 1998, at 9:05 A.M.

Luke and Janine Miller brought an action in the Gratiot Circuit Court against Hoover Corners, Inc., Thomas J. Conklin, and others, alleging in part that Hoover Corners was liable pursuant to the dramshop act, MCL 436.22(4); MSA 18.933(4), for furnishing liquor to Conklin while he was visibly intoxicated, thereby proximately causing Luke Miller's injury in an accident that involved a truck driven by Conklin. Hoover Corners filed a cross-claim against Conklin, seeking indemnification pursuant to MCL 436.22(7); MSA 18.993(7). Mediation resulted in an evaluation in favor of the plaintiffs, who accepted the evaluation with respect to Hoover Corners only. Hoover Corners accepted the evaluation and moved for the entry of judgment on the mediation evaluation with respect to the plaintiffs' claims against it. Hoover Corners also moved for summary disposition with respect to its cross-claim against Conklin. The court, Randy L. Tahvonen, J., granted Hoover Corners' motions. Conklin appealed.

The Court of Appeals *held*:

A liquor licensee against whom a judgment is entered in a dramshop action has the right to seek indemnification from the alleged visibly intoxicated person only where the judgment resulted from a determination by the trier of fact, either the court or a jury, that intoxication was a proximate cause of the damage or injury sustained by the plaintiff.

Subsection 4 of the dramshop act provides a "right to recover actual damages . . . in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death." Subsection 7 provides that "[a]ny licensee subject to the provisions of subsection (4) regarding the unlawful selling, furnishing, or giving of alcoholic liquor to a visibly intoxicated person shall have the right to full indemnification from the alleged visibly intoxicated person for all damages awarded against the licensee." The subsections, when read together, evince legislative intent that indemnification be available only where there has been an award of damages against a licensee after a determination by the

trier of fact that intoxication was a proximate cause of the damage, injury, or death. Because no such award and determination occurred in this case, indemnification is not properly available to Hoover Corners.

Reversed and remanded for further proceedings.

INTOXICATING LIQUORS — DRAMSHOP ACTIONS — INDEMNIFICATION OF LICENSEES BY INTOXICATED PERSONS.

   A liquor licensee against whom a judgment is entered in a dramshop action has the right to seek indemnification from the alleged visibly intoxicated person only where the judgment resulted from a determination by the trier of fact that intoxication was a proximate cause of the damage, injury, or death sustained (MCL 436.22[4],[7]; MSA 18.933[4],[7]).

*Braun Kendrick Finkbeiner P.L.C.* (by *Jeffrey C. Wilson*), for Hoover Corners, Inc.

*Fortino, Plaxton, Moskal & Costanzo, P.C.* (by *Anthony G. Costanzo*), for Thomas J. Conklin.

Before: MARKEY, P.J., and BANDSTRA and MARKMAN, JJ.

BANDSTRA, J. Defendant/cross-defendant Thomas J. Conklin appeals as of right an order of judgment granting defendant/cross-plaintiff Hoover Corners, Inc.'s motion for summary disposition on its cross-claim for indemnification. We reverse and remand. In this case, we are asked to interpret MCL 436.22(7); MSA 18.993(7), a statutory provision in the dramshop act that allows a licensee to receive indemnification from an intoxicated person for all damages awarded against the licensee.

Plaintiff Luke Miller and defendant Conklin were at the Hoover Corners bar. Miller left to go to another bar, and Conklin, who needed a ride home, went with him. Miller was driving a truck owned by his parents, defendants Stanley and Theresa Miller. At some point, Miller decided not to drive anymore, so he and Conk-

lin switched places. Presumably Miller did not close the passenger door securely because, as Conklin went around a curve in the road, Miller fell out of the truck. When Conklin backed up to retrieve Miller, he ran over him. Miller filed this action, seeking damages from Conklin for negligent operation of the vehicle, damages from his parents, defendants Stanley and Theresa Miller, under the owner's liability statute, MCL 257.401; MSA 9.2101, and damages from Hoover Corners under the dramshop act, MCL 436.22; MSA 18.993. His wife, Janine Miller, alleged a derivative claim for loss of consortium. Hoover Corners filed a cross-claim against Conklin for indemnification pursuant to MCL 436.22(7); MSA 18.993(7). Hoover Corners claimed that there was no liability under the dramshop act because no sale to a visibly intoxicated person (allegedly Conklin) proximately caused Miller's injuries. Conklin claimed that Hoover Corners could not seek indemnity in the absence of dramshop liability by Hoover Corners.

The case was mediated on October 21, 1996. Two of the three mediators evaluated the case at $50,000 for settlement purposes, apportioning $5,000 against Hoover Corners and $45,000 against defendants Stanley and Theresa Miller and Conklin. Plaintiffs accepted the evaluation with respect to Hoover Corners only and rejected it with respect to the other defendants. Hoover Corners accepted the evaluation; Conklin rejected it.

Hoover Corners then filed motions for entry of judgment on the mediation evaluation with respect to plaintiffs' claims against it and for summary disposition on its cross-claim for indemnification pursuant to MCR 2.116(C)(10) (no genuine issue with respect to

any material fact). Conklin objected to the dispositive motion, arguing that Hoover Corners was not entitled to indemnification because the case had been resolved without a trial on the merits. Following oral argument, the court granted Hoover Corners' motions, and an order of judgment was entered. Thereafter, plaintiffs and remaining defendants settled the case, which was dismissed with prejudice.

The dramshop act prohibits a retail licensee from selling, furnishing, or giving alcohol to a visibly intoxicated person, MCL 436.22(3); MSA 18.993(3), and provides a remedy for violation of the prohibition. Specifically, the act states:

> Except as otherwise provided in this section, an individual who suffers damage or is personally injured by a . . . visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the . . . visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, . . . shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action pursuant to this section, the plaintiff shall have the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death. [MCL 436.22(4); MSA 18.993(4).]

If the dramshop is held liable for a violation of the act, it has a right of indemnification against the intoxicated person under subsection 7, which provides:

> Any licensee subject to the provisions of subsection (4) regarding the unlawful selling, furnishing, or giving of alcoholic liquor to a visibly intoxicated person shall have the right to full indemnification from the alleged visibly intoxi-

cated person for all damages awarded against the licensee. [MCL 436.22(7); MSA 18.993(7).]

Conklin argues that the right of indemnification guaranteed by subsection 7 is triggered only when a judgment is entered after trial based on a determination by the trier of fact that there was an illegal sale to an intoxicated person that proximately caused injury to a third party. Conklin further argues that, in the present case, the judgment entered on a mediation acceptance is more akin to a consent judgment entered on a settlement than a judgment entered on a verdict following trial. Accordingly, because the judgment entered in this case was not a judgment entered after trial and, therefore, because the indemnification right guaranteed by subsection 7 was not triggered, Conklin argues that summary disposition was erroneously granted in favor of Hoover Corners on its claim for indemnification. Conklin's claims present questions of first impression, Michigan appellate courts never having considered subsection 7.[1]

"In enacting the dramshop act, the Legislature created a new remedy, not available at common law, and 'provided a specific action with which to achieve that remedy.'" *LaGuire v Kain*, 440 Mich 367, 374; 487 NW2d 389 (1992),   quoting *Browder v Int'l Fidelity*

---

[1] The only case that addresses the statute in depth is *Christian v Sanak*, 179 Mich App 9; 445 NW2d 446 (1989),  in which the issue was whether subsection 7, which was added by the 1986 amendment of the dramshop act, should apply to a cause of action filed after July 1, 1986, as the Legislature provided, even though the cause of action arose before July 1, 1986. In a more recent case, three members of our Supreme Court noted the existence of subsection 7 while discussing the name-and-retain provision but did not have reason to interpret it. *Green v Wilson*, 455 Mich 342, 355; 565 NW2d 813 (1997)  (KELLY, J). As Justice WEAVER noted in her separate opinion, "This Court has yet to be presented with a case interpreting the scope of the indemnification provision." *Id.* at 359.

*Ins Co*, 413 Mich 603, 613; 321 NW2d 668 (1982). The Legislature has attempted to keep the act internally balanced, resulting in a complete and self-contained solution to a social problem not adequately addressed at common law. *Browder, supra* at 614-615.

The primary purpose of statutory construction is to ascertain and give effect to the intention of the Legislature. *Id.* at 611. Statutory interpretation must begin with an examination of the words chosen by the Legislature. *LaGuire, supra* at 375. The statute should be construed in accordance with the ordinary and approved usage of the language employed in the statute. *Browder, supra* at 612. A court may consult dictionary definitions to determine the ordinary meaning of a word. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994). Where the Legislature uses certain and unambiguous language, the plain meaning of the statute must be followed. *Browder, supra* at 611.

Subsection 7 clearly and unambiguously indicates that the right to indemnification exists only where damages are "awarded" against the licensee. With regard to when damages can be considered "awarded" for purposes of subsection 7, Black's Law Dictionary (6th ed), p 137, defines the verb "award" as follows:

> To grant, concede, or adjudge to. To give or assign by sentence or judicial determination or after careful weighing of the evidence. Thus, a jury *awards* damages; the court *awards* an injunction; one *awards* a contract to a bidder. To confer as being deserved or merited. [Emphasis in original.]

Additionally, subsection 7 grants a licensee a right to indemnification only if the licensee is "subject to the provisions of subsection (4)." Subsection 4 grants the injured individual the right to recover "actual damages . . . in each case in which the court or jury determines that intoxication was a proximate cause of the . . . injury" and resulted from an "unlawful sale." In other words subsection 4 presupposes a determination on the merits of the injured individual's damage claims and an assessment of actual damages by the trier of fact.

Reading subsections 4 and 7 together to maintain the internal balance of the act, and according the term "awarded" its plain and ordinary meaning, the language employed evinces an intent by the Legislature that damages be awarded for purposes of indemnification under subsection 7 when monetary compensation is paid to an injured individual for actual damages suffered under the conditions specified in subsection 4, as determined by a trier of fact after consideration of the merits of the injured individual's damage claims. Such a construction of subsection 7 protects the allegedly visibly intoxicated person from collusion between the injured individual and the licensee, much in the same way the name-and-retain provision protects the licensee from collusion between the injured individual and the visibly intoxicated person. *Browder, supra* at 615. This construction of subsection 7 also discourages a party from negotiating away its legitimate defenses, as Conklin claims Hoover Corners did here, because it is assured of indemnification from a third party.

Here, the $5,000 judgment against Hoover Corners was entered pursuant to MCR 2.403(M)(2), which

provides that a judgment shall enter only with regard to those opposing parties who have accepted the portions of the mediation evaluation that apply to them. Although an accepted mediation evaluation serves as a final adjudication of the claims mediated and is binding on the accepting parties, the acceptance of a mediation award is not analogous to a judgment entered after a trial and a verdict by a judge or jury. *Vermilya v Carter Crompton Site Development Contractors, Inc*, 201 Mich App 467, 472; 506 NW2d 580 (1993); *Espinoza v Thomas*, 189 Mich App 110, 117; 472 NW2d 16 (1991). Instead, a mediation proceeding that ends with the parties' acceptance of the mediators' evaluation is like a consent judgment reached after negotiation and settlement, *Espinoza, supra,* because

> the process used to arrive at a mediation evaluation differs from the trial process in that under the mediation rule no fact finding is necessary, no formal opinion is issued, and the parties are significantly limited in the presentation of evidence. See, generally, MCR 2.403. In arriving at a mediation evaluation, the mediation panel considers factors similar to those considered in the settlement process; for example, the mediators may consider insurance policy limits, the certainty of the claim, and the likelihood of recovery from the defendants. Thus, the dollar figure suggested in a mediation panel's evaluation does not constitute the actual valuation of the plaintiff's damages, but, instead, suggests a settlement figure that is reached by considering the plaintiff's damages as one of several factors. [*Vermilya, supra* at 473.][2]

---

[2] The accuracy of the *Vermilya* Court's characterization of a mediation panel's evaluation is clearly demonstrated in the present case where two of the three mediators specifically noted that, in their opinion, the "damages sustained without regard to liability is [sic] greater than" the $50,000 that was being recommended for "settlement purposes." In other words,

Because a judgment entered on a mediation accept-
ance is not akin to a judgment entered following a
trial and a verdict by a judge or jury, and because a
mediation evaluation does not reflect the amount of
actual damages suffered by the injured individual, the
$5,000 judgment entered in this case on the mediation
acceptance does not constitute damages awarded
against Hoover Corners for purposes of subsection 7.

This conclusion is analogous to the recent decision
in *Auto Club Ins Ass'n v State Farm Ins Cos*, 221
Mich App 154; 561 NW2d 445 (1997), which involved
a dispute between no-fault and medical insurance car-
riers. The plaintiff paid no-fault benefits on behalf of
a person injured in an automobile accident and
sought reimbursement from another no-fault carrier,
defendant State Farm, and medical insurance carrier,
defendant Omega. State Farm, in turn, filed a cross-
claim for indemnification against Omega. After the
plaintiff and State Farm settled pursuant to media-
tion, State Farm sought judgment on its indemnifica-
tion claim, which the trial court granted. On appeal,
this Court reversed in part because State Farm "vol-
untarily paid plaintiff $24,000 in settlement of any
claims plaintiff may have had against it as a result of
the $24,000 mediation award entered in favor of plain-
tiff and against State Farm." *Id.* at 165-166. This Court
reasoned that "[p]ursuant to MCR 2.403(M)(2), State
Farm and plaintiff could enter into a judgment
between themselves because they accepted the por-
tions of the mediation evaluation that applied to
them. . . . The acceptance of a mediation evaluation is

---

these mediators did not consider $50,000 to be the measure of plaintiff's
damages but evaluated the claim at this level for settlement purposes in
consideration of problems plaintiff might encounter proving liability.

legally equivalent to a consent judgment reached after negotiation and settlement. . . . For all practical purposes, the parties entered into a settlement agreement under the mediation rules." *Id.* at 166 (citation omitted).

We recognize that the mediation process and Michigan law generally favor settlement of disputes. We also note that dramshops will be less likely to settle claims brought by injured persons if there is no automatic right to indemnification against the person whose intoxication allegedly caused the injury. Nevertheless, the language of the statute and principles of basic fairness prevent the allegedly intoxicated person from being bound by a settlement reached between the other parties.[3]

We reverse the decision of the trial court granting Hoover Corners' motion for summary disposition. Hoover Corners had no right to indemnification from Conklin for the amount paid to plaintiffs absent a determination that Hoover Corners was, in fact, liable to plaintiffs under subsection 4. We remand for further proceedings to determine the merits of the claim against Hoover Corners wherein Conklin shall be afforded the right to raise defenses that Hoover Corners might have raised had the underlying dramshop action proceeded to trial. We do not retain jurisdiction.

---

[3] Obviously, the policy in favor of settlement can be satisfied in these cases if all parties involved agree to a settlement of both the dramshop and indemnification claims.