ST. LOUIS SAN-FRANCISCO RAILWAY COMPANY *v.* MANNING.

Opinion delivered April 7, 1930.

E. T. Miller, E. L. Westbrooke, Jr., and E. L. West-brooke, for appellant.

J. H. Townsend, for appellee.

Kirby, J., (after stating the facts). Appellant insists that the court erred in allowing the introduction of testimony of witnesses stating their opinion of the amount of damage to the lands. These witnesses, however, stated their means and opportunity for knowing the value of the lands, and then their opinion of the value, and it was competent for them to do so. *St. L. I. M. & S. R. Co.* v. *Ayers,* 67 Ark. 31, 55 S. W. 159; *Railway Co.* v. *Morris,* 35 Ark. 622; *Standard Oil Co.* v. *Goodwin,* 174 Ark. 603, 299 S. W. 2.

The hypothetical question asked the witnesses was virtually the same as that approved in *St. Louis I. M. & S. Railway Co.* v. *Magness,* 93 Ark. 46, 123 S. W. 786, and the witnesses answering the question qualified themselves to do so by showing their familiarity with the lands and condition surrounding them before and after the waters of the river were diverted by the cut through the natural barrier allowing them to flow through and over appellee's land.

Appellant insists that it not only had the right to get rid of the surface water on its right-of-way, but was required to do so by statute (§ 8480, C. & M. Digest); that it caused no obstruction of any water course or diversion of any waters from a natural channel, and was not liable for any damages alleged to have been caused by waters flowing across appellee's lands. Although it is true appellant cut through the high bank of the ravine on its own right-of-way, which protected appellee's land on the west, and did not divert the water from any natural channel, nor change or disturb the natural flow of water in Spring River, the testimony tends to show that, before the cutting of the natural barrier protecting the west boundary of appellee's lands from the overflow waters of Spring River, her lands were not subject to overflows that were injurious because of the waters washing or cutting through, the overflows before being only back-water without current—still or dead water, and that her lands were not subject to overflow at all except during the extremely high water. Appellant's testimony on the other hand tended to show that the opening or cut through the natural barrier or embankment on the west of appellee's land could not have had effect to cause any damage to these lands in the years complained of, because it is undisputed that the water during these overflows was higher than the natural embankment and would have flooded in any event the lands north and south of it, the overflow water being high enough to cover the track of appellant which was 5 or 6 feet higher than any part of

the lands between it and the river. The jury found, however, that the lands of appellee would not have been injured by the current from the overflow but for the opening made in the bank or barrier on the west, and could have found that, because of it, they were now subject to be inundated by overflow from the river across the lower lands upstream at a stage of water from 5 to 6 feet lower than could have reached them before the opening was made. If appellant had diverted the waters of a stream or obstructed and collected surface water and turned it in injurious quantities through appellee's lands, he would have been liable to the payment of the resulting damages, and we can see no difference in principle between this case where its cutting or opening the natural barrier had the effect to release the waters in a swift current overflowing and injuring the lands below, and, the jury having found, under proper instructions and upon conflicting testimony that the lands were damaged thereby, its verdict will not be disturbed, and the judgment is accordingly affirmed.