FILED

06/07/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 27, 2024 Session

**STATE OF TENNESSEE v. HAYDEN JENNINGS BERKEBILE**

**Appeal from the Criminal Court for Knox County**
**No. 117131   Steven Wayne Sword, Judge**

_____

**No. E2022-01700-CCA-R3-CD**

_____

CAMILLE R. MCMULLEN, P.J., concurring in part and dissenting in part.

In this case, the State relied exclusively upon online communications sent between the Defendant, who resided in Indiana, and the suicide decedent, who resided in Tennessee, to establish a conviction of criminally negligent homicide.  In my view, the State failed to establish the essential elements of territorial jurisdiction and proximate cause.  No matter how "dark" or "diabolical" the online communications leading up to the decedent's death may have been, there is simply no law in Tennessee making it a crime to verbally persuade or coerce someone to commit suicide.[1]  Because Tennessee has yet to criminalize incitement, inducement, or encouragement to commit suicide, words alone cannot serve as the basis for a criminal conviction.[2]  Accordingly, I must respectfully dissent.

The Defendant contends there was insufficient evidence to establish proximate cause as required for criminally negligent homicide.  He asserts the State failed to establish the series of events leading up to the decedent's death and there was "uncertainty as to what happened on the video call."  Although he posits alternative scenarios under the State's proof, he claims none of them provide sufficient evidence of proximate cause.  In response, the State submits the Defendant's gross deviation from the standard of care proximately caused the suicide decedent's death.  The State relies generally on the suicide role-playing between the Defendant and the decedent, during which the Defendant would "push" the decedent to kill herself.  Specifically, the State relies on messages sent between

---

[1] Tennessee criminally prohibits assisted suicide under certain circumstances not present here.  It is also not a criminal offense "to fail to prevent another from taking their life."  See Tenn. Code Ann. 39-13-216 (a)(1)-(3), (b)(3).

[2] See People v. Campbell, 124 Mich. App. 333, 340, 335 N.W.2d 27, 30 (1983) (listing number of states that have made, or proposed making, incitement to suicide a crime); Justine L. Newman, Speech and Suicide-the Line of Legality, 49 Am. J.L. & Med. 436, 441 (2023) (as of 2021, forty-two states had laws criminalizing suicide coercion).

1

the Defendant and the decedent on the day of her death between 2:27 p.m. and 3:39 p.m. The State theorized that when the decedent asked the Defendant if he wanted to play Russian roulette, he told her it would not work because she could see the bullet. The decedent then suggested she could close her eyes or wear a blindfold; the Defendant would be the only one who would know where the bullet was, and he would have control over whether she lived or died. Immediately before the video call, the decedent confirmed that the upcoming sexual suicide role-play would involve her playing Russian roulette blindfolded. Even though there was no video of the decedent's death, the State insists "the jury could readily infer [the Defendant's] gross deviation from the standard of care [] proximately caused [the decedents'] death from the messages between the two." The State submits the jury could reasonably infer from the prior messages that (1) during the call during which the decedent died, she was playing Russian roulette with her eyes closed, making it a more dangerous activity than it typically would have been; and (2) based on the decedent's statements that the Defendant could decide whether she lived or died but she trusted him not to allow her to die, the Defendant was responsible for ensuring the Russian roulette suicide play did not claim the decedent's life by informing her of the location of the bullet.

In his reply, the Defendant contends the State has waived the above theory because it has chosen to present it for the first time on appeal. Waiver notwithstanding, the Defendant submits that the evidence at trial does not support the State's theory on appeal. On the day of the decedent's death, there was no proof that (a) they did, in fact, play Russian roulette in this unusual way and (b) it was during that game, and not after, that the decedent shot herself when (c) the Defendant knew or should have known where the bullet was but failed to warn the decedent. The Defendant insists that the State's argument is not a reasonable inference from the available evidence but sheer speculation. In support of his position, the Defendant points out that the trial court rejected the State's appellate theory and repeatedly expressed his conclusion based on the trial evidence that the Defendant had not intended or wanted for the decedent to die but instead should "have been aware that such sexual suicidal role play would lead somebody that close to suicide to actually doing it for his pleasure."

In every homicide prosecution, the State must establish causation beyond a reasonable doubt. Causation is a hybrid concept, consisting of two constituent parts: actual cause and legal cause. Burrage v. United States, 571 U.S. 204, 210 (2014) (citing H. Hart & A. Honore, Causation in the Law 104 (1959)). Proximate cause is a limiting principle to liability, recognizing that "the legal eye cannot, and should not see [too] far." Nicholas LaPalme, Michelle Carter and the Curious Case of Causation: How to Respond to A Newly Emerging Class of Suicide-Related Proceedings, 98 B.U. L. Rev. 1443, 1447 (2018) (citing Rollin M. Perkins & Ronald N. Boyce, Criminal Law 774 (3d ed. 1982)).

In Tennessee, "[p]roximate cause," within the law of homicide, means nearness in point of causal relation, and not necessarily nearest act to injury. Letner v. State, 299 S.W.

2

1049, 1052 (Tenn. 1927). "'[It] is that which, in a natural and continual sequence, unbroken by any new, independent cause produces the injury, and without which the injury would not have occurred.'" State v. Pack, 421 S.W.3d 629, 639 (Tenn. Crim. App. 2013) (quoting Gray v. Brown, 217 S.W.2d 769, 771 (Tenn. 1948)). The victim's death must be the natural and probable result of the defendant's unlawful conduct. State v. Goodwin, 143 S.W.3d 771, 779 (Tenn. 2004). However, the defendant's actions "need not be the sole or immediate cause of the victim's death." State v. Farner, 66 S.W.3d 188, 203 (Tenn. 2001) (citing Letner, 299 S.W. at 1051). Rather, "a wrongdoer cannot escape liability for a criminal act just because the criminal act of another contributed to produce the prohibited consequence." State v. Baggett, 836 S.W.2d 593, 595 (Tenn. Crim. App. 1992). Therefore, "one whose wrongdoing is a concurrent proximate cause of an injury may be criminally liable the same as if his wrongdoing [was] the sole proximate cause of the injury." Id. The defendant "'is responsible if the direct cause results naturally from his conduct. The same is true if the direct cause is an act of the deceased himself reasonably due to defendant's unlawful conduct.'" Farner, 66 S.W.3d at 203 (quoting Letner, 299 S.W. at 1051). "'[T]he act of the deceased, resulting in his death (not being corporally injured by the defendant), must have been the natural and probable consequence of the unlawful conduct of [the defendant].'" Id. (quoting Fine v. State, 246 S.W.2d 70, 73 (Tenn. 1952)). The determination of causation in a criminal case is a question of fact to be determined by the trier of fact based on the evidence at trial. Id. at 204; State v. Randolph, 676 S.W.2d 943, 948 (Tenn. 1984).

"The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances." Paroline v. United States, 572 U.S. 434, 444 (2014). In the civil context, "[c]ourts have long been rather reluctant to recognize suicide as a proximate consequence of a defendant's wrongful act." Cotten v. Wilson, 576 S.W.3d 626, 639-40 (Tenn. 2019) (quoting Watters v. TSR, Inc., 904 F.2d 378, 383 (6th Cir. 1990)). In cases in which the intervening event is the decedent's suicide, courts in Tennessee and elsewhere have generally held that suicide will be deemed a superseding cause of death if it was a willful, calculated, and deliberate act of one who has the power of choice. Id. (internal citations and quotations omitted). This is referred to as the suicide rule and is based on the notion that suicide committed by a person who has the power of choice "is an abnormal thing" and that no reasonable person could foresee that a rational person would intentionally choose to commit suicide. Id. There are exceptions to the suicide rule; however, "[t]he crucial inquiry is whether the defendant's negligent conduct led to or made it reasonably foreseeable that the deceased would commit suicide. If so, the suicide is not an independent intervening cause breaking the chain of legal causation." White v. Lawrence, 975 S.W.2d 525, 530 (Tenn. 1998). In cases where Tennessee courts have recognized an exception to the suicide rule, they have required solid evidence in the record that the decedent's suicide was a reasonably foreseeable probability resulting from the defendant's conduct. Cotton, 576 S.W.3d at 648.

3

As an initial matter, I believe the majority misapprehends State v. Farner, 66 S.W.3d 188, 203 (Tenn. 2001), a drag racing case that involved a car race between the defendant and the victim, Landon Baker. The race ended when Baker lost control of his car and collided with two other vehicles. Baker and his passenger died as a result of the collision. The persons driving the other vehicles, Teresa Gilliam and Priscilla Redwine, sustained serious injuries. The defendant's car was not physically involved in the collision. The defendant was later convicted of criminally negligent homicide of Baker and other offenses in connection with the drag racing. 66 S.W.3d at 192.

The Tennessee Supreme Court granted certiorari to resolve "whether Tennessee law recognizes a co-perpetrator rule which bars the defendant's convictions for criminally negligent homicide on the basis that the victims were co-participants in the drag race." Farner, 66 S.W.3d at 191. The Court rejected various arguments of the defendant challenging his convictions of criminally negligent homicide including (1) that they were precluded "because the victims were co-perpetrators in the underlying crime of drag racing;" (2) they were in violation of the felony murder rule that the killing must be "in pursuance of" the underlying felony offense; and (3) that the negligence of a victim co-participant in a drag race was a complete defense if the victim's negligent conduct is a proximate cause of the victim's death. Id. at 200. In rejecting these arguments, the Court relied on several drag racing cases from other states and reasoned as follows:

> The defendant's unlawful act or omission need not be the sole or immediate cause of the victim's death. Letner, 156 Tenn. at 76, 299 S.W. at 1051. *"[H]e is responsible if the direct cause results naturally from his conduct. The same is true if the direct cause is an act of the deceased himself reasonably due to defendant's unlawful conduct."* Id. (emphasis in original). This concept was reaffirmed in Fine:
>
> > the act of the deceased, resulting in his death (not being corporally injured by the defendant), must have been the natural and probable consequence of the unlawful conduct of [the defendant].
>
> 193 Tenn. at 429, 246 S.W.2d at 73. Finally, a victim's contributory negligence does not relieve a defendant of criminal liability for his or her own criminally negligent conduct. See, e.g., Gentry v. State, 184 Tenn. 299, 305, 198 S.W.2d 643, 646 (Tenn. 1947) (holding that the trial court did not err in charging the jury that the victim's contributory negligence in driving while intoxicated did not relieve the defendant of his guilt of involuntary manslaughter where the defendant's automobile caused the collision that killed the victim). However, a victim's contributory negligence may be considered in determining whether, under the circumstances, the defendant's criminally negligent conduct was a proximate cause of death, or whether the

4

victim's conduct was an independent, intervening cause of death. See Copeland [v. State], 154 Tenn. [7,] 11, 285 S.W. [565,] 566 [(Tenn. 1926)].

Farner, 66 S.W.3d at 203.

The Farner Court declined "to adopt a broad co-perpetrator rule which precludes imposition of criminal liability upon a defendant for the death of a co-participant in a drag race." The Court held that "causation in criminal cases generally is a question of fact for a properly instructed jury, that a victim's contributory negligence is not a complete defense but may be considered in determining whether or not the defendant's conduct was a proximate cause of death," and that a jury's determination of the causation issue will be reviewed on appeal under the familiar sufficiency of the evidence standard and not disturbed so long as the evidence is sufficient to support the jury's determination. Id. at 204. The defendant's convictions were reversed because the trial court failed to instruct the jury on proximate causation, an essential element of the offense. Id. at 192.

While Farner provides guidance generally concerning principles of causation, it did not hold the evidence was sufficient because the defendant "convinced them to engage in a highly dangerous activity," as stated by the majority. Farner was limited to determining whether the other race car driver/victim's participation in the crime of drag racing precluded the survivor/driver defendant's criminal liability. Far from what the majority implies, the causation principles espoused in Farner do not lend themselves to easy application here. First, the decedent's act of suicide, unlike drag racing, is not a criminal offense in Tennessee. Next, under Farner, the suicide must have been the natural and probable consequence of the *unlawful conduct* of the Defendant. However, neither the decedent's tragic act of suicide nor the Defendant's online communications with her were prohibited by law.

As a general rule, a crime is composed of actus reus (the physical act) and mens rea (mental intent), both of which are necessary to constitute a crime. Here, the criminally negligent homicide statute and the definition of criminal negligence follow the general rule and require a person to engage in an unlawful act or unlawful conduct to justify criminal liability. See 1Wayne R. LaFave, Subst. Crim. L. § 6.1(a) (3d ed. 2023) (defining the meaning of "act" or "action" as external bodily movements, noting the Model Penal Code § 1.13 defines "act" or "action" as a "bodily movement whether voluntary or involuntary," and noting Section 2 of the Restatement (Second) of Torts defines the term "act" as "an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended"). At a minimum, this means some physical act is required to establish a criminally negligent homicide conviction. I do not believe that online communications can serve as a substitute for an unlawful physical act. While morally reprehensible, the online communications in this case do not satisfy the actus reus requirement. I would have concluded that the evidence was insufficient as a matter of law

to support the criminally negligent homicide conviction because it was based on speech alone, not criminal conduct.

Based on much of the same above reasoning, I would have concluded that the trial court did not have territorial jurisdiction in this case. See State v. Johnson, No. M2005-02855-CCA-R3-CD, 2006 WL 3498046, at *5 (Tenn. Crim. App. Nov. 21, 2006) (noting that the statute requires an affirmative action on the part of the foreign state defendant to effectuate a crime in Tennessee). Because no crime was commenced in Indiana when the Defendant engaged in online communication with the decedent, there was no consummation of a crime with the death of the decedent in Tennessee. Moreover, because suicide is not a criminal offense, there was no crime to consummate. Finally, to equate "other means proceeding directly from the person" with electronic or online communication would render superfluous the "electronic means" requirement in most Tennessee laws criminalizing the same or similar conduct. See e.g. Tenn. Code Ann. § 39-13-529 (a) ("It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or internet service, including webcam communications, directly or through another, to intentionally command, hire, persuade, induce or cause a minor to engage in simulated sexual activity that is patently offensive or in sexual activity, where such simulated sexual activity or sexual activity is observed by that person or by another.").

The majority also erroneously adopts the State's position that, based on Farner, the Tennessee Supreme Court "tacitly endorsed the notion that participating in a game of Russian roulette that claims the life of another is a gross deviation from the standard of care that naturally and probably leads to the others death." However, People v. Hansen, 68 Cal. Rptr. 2d 897 (Cal. Ct. App. 1997), and Commonwealth v. Atencio, 189 N.E.2d 223 (Mass. 1963), the two cases cited in Farner and relied upon by the majority, are factually distinct from the instant case. While Hanson and Atencio are seemingly on point because they involve the game of Russian roulette, the defendants in these cases were physically present and participated in the game of Russian roulette with the decedent. These homicide convictions were based on the defendant's physical assistance in the suicide. See e.g., State v. Marti, 290 N.W.2d 570, 583 (Iowa 1980) (holding that "preparing and providing a weapon for one who is unable to do so and is known to be intoxicated and probably suicidal" constitute actions that support the defendant's conviction of involuntary manslaughter); State v. Bier, 591 P.2d 1115, 1120 (Mont. 1979) (affirming a judgment of negligent homicide for a defendant's wife's suicide, where the defendant "threw [a] cocked, loaded firearm within reach of his intoxicated wife, challenged her to use it, and allowed her to take the gun off the bed"). The courts reasoned that the defendant's "concerted action and cooperation" helped to bring about the death of the decedent and that there was "a mutual encouragement in a joint enterprise." Hansen, 68 Cal. Rptr. 2d at 900.

Here, the Defendant was not physically present at the time of the victim's suicide; there was no in-person mutual or joint enterprise to engage in Russian roulette (i.e.

6

defendant did not provide the means for decedent's death); and the above cases do not apply. See Lewis v. State, 474 So. 2d 766, 771 (Ala. Crim. App. 1985) (noting that the key to determining cause in fact and proximate cause in cases involving defendant criminal liability for suicide decedent is whether defendant was present at the time the suicide decedent shot himself and holding that suicide decedent's act of "free will" in shooting himself with a gun previously used by the defendant while coaching the victim on how to play Russian roulette superseded the defendant's act); see also Guyora Binder & Luis Chiesa, The Puzzle of Inciting Suicide, 56 Am. Crim. L. Rev. 65, 66 (2019) (noting that homicide liability for the suicide of another is extremely rare and almost always involves a tangible contribution to the killing).

Alternatively, assuming actus reus was demonstrated, and the physical act was unlawful, I would have concluded that the Defendant's online conduct in communicating with the decedent was not the proximate cause of the decedent's death. As to this issue, the presentment in this case does not identify the alleged criminally negligent conduct. As noted by the majority, thousands of online communications between the Defendant and the decedent over a two-and-a-half-year period were admitted into evidence at trial via media thumb-drive. The record shows the State had a witness read excerpts from these online communications during the trial; however, none were transcribed for the appellate record. I agree with the Defendant that the State's theory of liability at trial was unclear. While this has led to some confusion, I do not believe it constitutes a waiver of the State's theory advanced on appeal that the Defendant intentionally let the decedent die by not telling her where the bullet was in the gun.

Taking the evidence in the light most favorable to the State, however, I would have concluded that there was no basis for the trier of fact to have found that the decedent's suicide was the foreseeable result of the Defendant's conduct. It is undisputed that there is no direct evidence concerning the circumstances surrounding the decedent's death. The State insists the jury could reasonably infer from the prior online messages between the Defendant and the decedent that (1) during the call during which the decedent died, she was playing Russian roulette with her eyes closed; (2) based on the decedent's statements that the Defendant could decide whether she lived or died and she trusted him not to allow her to die; and (3) that the Defendant was responsible for ensuring the Russian roulette suicide role play did not claim the decedent's life and he failed to inform her of the location of the bullet. I believe this is far too speculative, especially given the fact that their prior suicidal role-play games never involved these circumstances. State v. Jenkins, 733 S.W.2d 528, 531 (Tenn. Crim. App.1987) (noting that a conviction for a criminal offense may not be based upon conjecture, guess, speculation or mere possibility). As such, there was nothing in the record to demonstrate the Defendant knew his conduct would result in the decedent ultimately taking her own life. Because the proof failed to establish that the victim's death was a reasonably foreseeable result of the Defendant's unlawful conduct, I would have concluded that the decedent's suicide was "an independent, intervening cause" that insulated the Defendant from criminal liability.

I agree with the resolution reached by the majority with respect to the remaining evidentiary and sentencing issues.  However, in my view, affirming this conviction expands the reach of the criminally negligent homicide statute beyond its intended scope and sets a dangerous legal precedent that words alone can result in criminal liability.  Accordingly, I dissent.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE